574 F.2d 46
 Miriam WINTERS, Plaintiff-Appellant,
v.
Abe LAVINE, Individually and as Commissioner of the New York
State Department of Social Services, and James R. Dumpson,
Individually and as Commissioner of the New York City
Department of Social Services, Defendants-Appellees.
 No. 1152, Docket 77-7101.
 United States Court of Appeals,
Second Circuit.
 Argued May 23, 1977.
Decided Jan. 16, 1978.
 
 Jonathan A. Weiss, Legal Services for the Elderly Poor, New York City, for plaintiff-appellant.
 Maryellen Weinberg, Asst. Atty. Gen., New York City (Louis J. Lefkowitz, Atty. Gen. of State of New York, New York City, and Samuel A. Hirshowitz, First Asst. Atty. Gen., New York City, on brief), for defendant-appellee State Commissioner.
 W. Bernard Richland, Corp. Counsel, L. Kevin Sheridan, Chief, Appeals Div., New York City, for defendant-appellee Dumpson.
 Before WATERMAN and TIMBERS, Circuit Judges, and MEHRTENS, District Judge.*
 WATERMAN, Circuit Judge:
 
 
 1
 This civil rights case brought pursuant to 42 U.S.C. § 1983 emanates from the State of New York's allegedly wrongful and unconstitutional denial of plaintiff-appellant Miriam Winters' requests that the state, through its Medicaid program, New York Social Services Law §§ 363-69 (hereinafter "N.Y. Soc. Serv. Law"), pay for what Winters asserts was "medical" treatment administered by Christian Science "practitioners" and "nurses." The case comes before us now on an appeal from a judgment order of the United States District Court for the Eastern District of New York, entered by United States Circuit Judge Hays and United States District Judges Bartels and Dooling sitting as a three-judge district court convened pursuant to 28 U.S.C. §§ 2281 and 2284,[1] which denied some of the legal and equitable relief sought by plaintiff on the ground that she was barred by the res judicata effect of a prior state court judgment from relitigating the propriety of the state's denial of her request for payment of the bill for services submitted to her by a Christian Science nurse.[2] Additionally, the three-judge court abstained from deciding whether the state had erroneously denied Winters' request that payment be made for treatment administered by a Christian Science "practitioner." As to this "practitioner claim," the district court retained jurisdiction to resolve the federal constitutional issue therein presented in the event a pending Article 78 proceeding which had been instituted by plaintiff in the New York State Supreme Court did not construe a section of the New York Medicaid statute, N.Y. Soc. Serv. Law § 365-a, in a manner that would entitle plaintiff to the particular payments she seeks to have the state make. Inasmuch as we believe the district court reached the correct result, we affirm.
 
 
 2
 Plaintiff-appellant, Miriam Winters, although not a formal church member, is an adherent of the doctrines of the First Church of Christ Scientist of Boston, Massachusetts ("Christian Science Church") and, as such, does not avail herself of the traditional medical services typically provided by physicians and nurses. Instead, whenever she becomes ill and is in need of medical assistance, she submits herself to the treatment and care administered by Christian Science "practitioners" and "nurses." Plaintiff claims that she was ill periodically from the middle of 1973 through 1974 and that, in accordance with her religious beliefs, she sought to alleviate her medical difficulties by obtaining the treatment and care offered by a Christian Science nurse and by Christian Science practitioners. Following the rendition of such services, appellant, who, by virtue of her status as, at first, a state welfare recipient and, later, as a recipient of Supplemental Security Income, was eligible for Medicaid benefits, submitted to the New York City Department of Social Services ("city department") the bills she had received from the Christian Science practitioners and from the nurse. In each instance appellant's request that the bill be paid under the state's Medicaid program was denied by the city welfare office.
 
 
 3
 Appellant presented her initial request for payment to the city department on November 12, 1973. After this request for payment of $78.66 for treatments administered by and supplies received from a Christian Science nurse had been rejected by that agency, Winters, as she was entitled to do under N.Y. Soc. Serv. Law § 366-a(4), appealed this determination to the New York State Department of Social Services. Although she had requested a "fair hearing," she did not appear at the hearing which was held on December 18, 1973.[3] In a written decision dated February 20, 1974 the state agency affirmed the city department's denial of Winters' request for payment for the services supposedly rendered by the Christian Science nurse on the ground that there was no provision in § 365-a(2) of the Social Services Law authorizing such payment.
 
 
 4
 Appellant then sought review of the state Department of Social Services's administrative action by way of an Article 78 proceeding[4] filed on May 28, 1974 in the New York State Supreme Court for the County of New York. There the respondent Commissioners moved to have the proceeding transferred to the Appellate Division, First Department, which motion was granted. In the Appellate Division Winters argued that under the Medicaid statute she was entitled to payment for the services provided by the Christian Science nurse, and that, if the New York statutes did not, in fact, make such provision, then those statutes operated in an unconstitutional manner so as to deprive Winters of her first amendment right to the free exercise of religion. On October 16, 1975, the Appellate Division affirmed the state Department of Social Services's decision denying Winters' request for payment of the services of the Christian Science nurse and stated the rationale for its decision to be the following:
 
 
 5
 (T)he request for the payment of the cost of Christian Science nursing care was properly denied. Aside from the fact that a Christian Science nurse is not classified as a registered nurse (Education Law § 6901 et seq.), petitioner has not demonstrated that she is entitled to payments pursuant to Social Services Law § 365-a, since there is insufficient (evidence) in the record to indicate either the nature of her illness or the treatment which she received.
 
 
 6
 Winters v. Commissioner of New York State Dep't of Social Services, 49 A.D.2d 843, 844, 373 N.Y.S.2d 604, 605 (1st Dep't 1975), appeal dismissed, 39 N.Y.2d 832, 385 N.Y.S.2d 1029, 351 N.E.2d 441, appeal dismissed and cert. denied, 429 U.S. 1011, 97 S.Ct. 634, 50 L.Ed.2d 620 (1976).
 
 
 7
 From this adverse decision in the Appellate Division, Winters took an appeal to the New York Court of Appeals. She was unsuccessful there also, the Court of Appeals dismissing her appeal sua sponte "upon the ground that no substantial constitutional question (was) directly involved." Undeterred by this summary dismissal, Winters next took an appeal to the United States Supreme Court. The Supreme Court also disposed of her case summarily, stating: "Appeal from App.Div., Sup.Ct.N.Y., 1st Jud. Dept., dismissed for want of jurisdiction. Treating the papers whereon the appeal was taken as a petition for writ of certiorari, certiorari denied." Winters v. Commissioner, New York State Dep't of Social Services, 429 U.S. 1011, 97 S.Ct. 634, 50 L.Ed.2d 620 (1976).
 
 
 8
 Appellant made three other requests to the city Department of Social Services for payment under the Medicaid program. Each of these requests sought payment for additional treatments administered by Christian Science practitioners.
 
 
 9
 The first request for payment of a bill submitted to Winters by a Christian Science practitioner was made on December 21, 1973. When the city Department of Social Services denied this request, Winters appealed to the state Department of Social Services and, after a "fair hearing," the state agency determined that Winters was "entitled to be reimburse(d) for the treatment so billed". Pursuant to this determination, Winters' bill in the amount of $70.00 was paid.[5]
 
 
 10
 The second demand for payment for services provided by a Christian Science practitioner was made on March 1, 1974. Shortly thereafter, this request was rejected by the city Department of Social Services and Winters again pursued an appeal to the state Department of Social Services. This time, however, in a decision seemingly incompatible with its recent ruling on the same subject, the state agency ruled that under the state Medicaid program, N.Y. Soc. Serv. Law § 365-a, the agency was not authorized to pay for services rendered by a Christian Science practitioner and it therefore refused to pay the bill submitted to Winters by the practitioner. As when her request for payment for the services of a Christian Science nurse had been denied by the state agency, Winters brought an Article 78 proceeding in the New York State Supreme Court to contest the determination of the state Department of Social Services. This case (the "practitioner case") is still pending in the New York State Supreme Court despite an attempt by the state Department of Social Services to have the case dismissed.
 
 
 11
 Winters submitted a third, and final, request for payment for treatments rendered by a Christian Science practitioner. No administrative action has been taken on this request.
 
 
 12
 Following the submission of this final request for payment, on October 8, 1974 Winters commenced the federal civil rights action from which the appeal presently before us arose. She named as defendants Abe Lavine and James R. Dumpson, both of whom were sued individually and also in their respective official capacities as the commissioners of the state and city Departments of Social Services. Seeking to prosecute the lawsuit as a class action, Winters claimed to represent the interests of all other persons similarly situated, described more specifically in the complaint as being "those persons who follow the practices and beliefs of the Christian Science Religion, which beliefs require them to use the Services of Christian Science practitioners rather than conventional 'medical' practitioners when they are ill and who would be entitled to medical assistance benefits for such services but for the application of the illegal statute challenged by this law suit." Winters set forth three claims in her complaint, the principal one being that the New York Medicaid statute, if construed so as to exclude Christian Science treatment from coverage under the medical assistance program, was unconstitutional because it denied plaintiff and others similarly situated their first and fourteenth amendment rights to the free exercise of religion. The complaint also alleged violations of the federal and state regulations, 45 C.F.R. § 249.11 and 18 N.Y.C.R.R. § 360.29, respectively, which establish the right of Medicaid recipients to obtain medical services from any "qualified" provider of such services. For relief, Winters sought, inter alia, injunctions prohibiting the defendants from refusing to pay benefits for Christian Science treatment provided to eligible Medicaid recipients, damages in the amount of $431.66 for the Christian Science treatments already administered to Winters, and for which the state has not as yet paid (but see note 5 supra ), and punitive damages of $50,000.00.
 
 
 13
 The request for class certification was denied by Judge Bartels on the ground that Winters was not a suitable class representative because, as appeared from an affidavit of a Christian Science Church official which was submitted on behalf of the Church as an amicus curiae in the case, Winters' efforts to procure payment from public funds for the Christian Science treatments were actually contrary to Church policies. Judge Bartels did, however, determine the constitutional issue to be substantial enough to require the convening of a three-judge court. Oral argument was heard by the court on November 25, 1975 and, on July 21, 1976, the court issued its decision in the case.
 
 
 14
 All three judges agreed that Winters' claim seeking to have the state pay for the services of the Christian Science nurse was barred by res judicata. There was a difference of opinion among the panel members, however, on what disposition should be made of the claim seeking Medicaid payment for the services of the Christian Science practitioner. Judge Bartels, writing for himself and Judge Hays, decided that under the circumstances the court should abstain from deciding the constitutional issue raised by the practitioner claim until the state courts, in the lawsuit then and now still pending in the New York State Supreme Court, had decided whether the New York Medicaid statutes should be interpreted so as to render compensable the services of a Christian Science practitioner. Judge Dooling disagreed, stating that he would proceed directly to the merits and hold that, inasmuch as Christian Science practitioners were not licensed under New York law, the fees of these practitioners could not be paid out of Medicaid funds.
 
 
 15
 Following the issuance of the court's decision, Winters, by a notice of appeal filed September 15, 1976, took a direct appeal to the United States Supreme Court. On December 13, 1976 the Supreme Court ordered that the judgment of the district court be vacated and that a fresh decree be rendered so that a timely appeal might be taken to the court of appeals. Winters v. Lavine, 429 U.S. 1012, 97 S.Ct. 634, 50 L.Ed.2d 621 (1976). See note 1 supra. Accordingly, on January 31, 1977 the district court issued an order by which that court adhered to its original decision and judgment in the case. Winters filed a notice of appeal to this court on February 18, 1977.
 
 
 16
 On appeal Winters contends that the district court erred in holding that she was barred by the doctrine of res judicata from litigating in federal court her claim that the New York Medicaid statute, if interpreted so as to deny benefits for Christian Science nursing care, is unconstitutional. Winters also argues that the district court should not have abstained from deciding the constitutionality of the state's denial of Medicaid benefits for the treatments administered by the Christian Science practitioner. Finally, assuming our acceptance of her position on either or both of these threshold issues, Winters asserts that the state's denial of Medicaid benefits for Christian Science treatment violated her constitutional right to the free exercise of her religion.[6] Inasmuch as we agree with the district court that the nursing claim was barred by the principles of res judicata[7] and that the doctrine of abstention is properly invoked to defer consideration of the merits of the constitutional issue embodied in the practitioner claim, we do not reach the first amendment issue which Winters discusses in her brief.
 
 
 17
 * We first address Winters' contention that the three-judge court erroneously ruled that her attempt in this § 1983 action to challenge the denial of her Medicaid claim for the services of the Christian Science nurse is barred by the adverse judgment entered against her in the Article 78 proceeding which she instituted against the same defendants she has now sued here, contesting there as she does here the denial of that same claim for Medicaid benefits. The thrust of Winters' argument is that the principles of res judicata cannot bar consideration of her constitutional argument here because, although she readily admits raising that very claim before the Appellate Division, the issue was supposedly not determined by that court and it therefore remains available for subsequent presentation to and for resolution by a federal court in a § 1983 action. For the reasons which we shall offer shortly we find this line of argument unpersuasive.
 
 
 18
 In general, 28 U.S.C. § 1738[8] would be the logical starting point for any analysis of the extent to which a prior state court judgment precludes a subsequent action brought in a federal court. E. g., Mitchell v. National Broadcasting Co., 553 F.2d 265, 274 (2d Cir. 1977); see, e. g., McCune v. Frank, 521 F.2d 1152, 1155-57 (2d Cir. 1975); American Mannex Corp. v. Rozands, 462 F.2d 688, 690 (5th Cir.), cert. denied, 409 U.S. 1040, 93 S.Ct. 524, 34 L.Ed.2d 489 (1972). That statute "impose(s) on federal courts the obligation to give full faith and credit to judgments entered by state courts of competent jurisdiction. The federal court presented with a state court judgment is required to give that judgment the same force and (conclusive) effect as it has in the state in which it was rendered. Ordinarily, this would require an analysis of the res judicata effect of the state court proceedings within that state, involving examination of the local law of res judicata." Mitchell v. National Broadcasting Co., supra, 553 F.2d at 274 (citations omitted); accord, e. g., McCune v. Frank, supra, 521 F.2d at 1156-57. Also, § 1738 requires the federal court to apply, where appropriate, the state court's standards of collateral estoppel as well as its standards of res judicata. E. g., American Mannex Corp. v. Rozands, supra, 462 F.2d at 690; United States v. Silliman, 167 F.2d 607, 620-21 (3d Cir.), cert. denied, 335 U.S. 825, 69 S.Ct. 48, 93 L.Ed. 379 (1948); 1B Moore's Federal Practice P 0.406, at 902 n. 4 (1974); Developments in the Law Section 1983 and Federalism, 90 Harv.L.Rev. 1133, 1338 n. 37 (1977). When applied to the case before us, these rules require us to consult New York law in order to determine whether and to what extent Winters' unsuccessful Article 78 proceeding would bar her current federal Civil Rights Act action if that federal action had been brought in the state courts.
 
 
 19
 Notwithstanding the existence of § 1738 and the seeming clarity of its direction that state law should control on the question of the extent of preclusion, there are a number of cases in this circuit which have analyzed the issue of the extent to which the prior state court judgment precludes the subsequent federal Civil Rights Act lawsuit and make no reference whatever to § 1738 or to the concepts of res judicata and collateral estoppel which would be employed by the courts of the state in which the prior judgment was rendered. See, e. g., Turco v. Monroe County Bar Association, 554 F.2d 515 (2d Cir.), cert. denied, 434 U.S. 834, 98 S.Ct. 122, 54 L.Ed.2d 95 (1977); Graves v. Olgiati, 550 F.2d 1327 (2d Cir. 1977); Newman v. Board of Education, 508 F.2d 277 (2d Cir.), cert. denied, 420 U.S. 1004, 95 S.Ct. 1447, 43 L.Ed.2d 762 (1975); Lombard v. Board of Education, 502 F.2d 631 (2d Cir. 1974), cert. denied, 420 U.S. 976, 95 S.Ct. 1400, 43 L.Ed. 656 (1975). Instead of referring to and applying the standards of res judicata or of collateral estoppel which would be applied by the courts of the state in which the prior judgment was rendered, these cases appear to be applying what has been termed a "general federal law of res judicata." Developments in the Law section 1983 and Federalism, 90 Harv.L.Rev. 1133, 1334 (1977). While this phenomenon of apparent disregard of the requirements of § 1738 has never been comprehensively explored or explained, we have attributed the existence of it to "the creation of special rules whereby in certain circumstances state court judgments are accorded perhaps . . . a lesser effect by a federal court in a Civil Rights Act case than they would be given by the state courts." McCune v. Frank, supra, 521 F.2d at 1156 n. 10 (emphasis supplied); see Mitchell v. National Broadcasting Co., supra, 553 F.2d at 279 n. 6 (Feinberg, J., dissenting) ("this court has not always applied traditional res judicata rules to Civil Rights Act cases and Article 78. See Lombard, supra (prior Article 78 proceeding in which claim of procedural due process could have been, but was not, raised does not preclude § 1983 action based on that claim)"); Theis, Res Judicata in Civil Rights Act cases: An Introduction to the Problem, 70 Nw.U.L.Rev. 859, 865 & n. 35 (1976) (comparison of Thistlethwaite v. City of New York (497 F.2d 339 (2d Cir.), cert. denied, 419 U.S. 1093, 95 S.Ct. 686, 42 L.Ed.2d 686 (1974)) with Lombard offered to support statement that "the decisions of the lower courts teem with inconsistencies"). Those circumstances apparently exist when "well-defined federal policies, statutory or constitutional, . . . compete with those policies underlying section 1738," Mitchell v. National Broadcasting Co., supra, 553 F.2d at 274, quoting American Mannex Corp v. Rozands, supra, 462 F.2d at 690, although "(t)he fact that a federal civil rights action is involved . . . is not by itself a valid reason for denying full faith and credit to the state court proceedings." Mitchell v. National Broadcasting Co., supra, 553 F.2d at 274 (emphasis supplied); American Mannex Corp. v. Rozands, supra, 462 F.2d at 690.
 
 
 20
 Fortunately, in the instant case, we need not decide which approach it is appropriate to pursue, to the exclusion of the other, inasmuch as we believe that Winters' present § 1983 lawsuit is barred regardless of whether we follow the McCune-Mitchell approach or whether we apply the principles of res judicata analysis that have been developed and followed in this circuit in cases such as Turco v. Monroe County Bar Association, Lombard v. Board of Education and Graves v. Olgiati. We predicate this belief upon the ground that, as a practical matter, the results obtained under the two methods of analysis will usually differ only when, as in Lombard, Newman and Olgiati, a certain issue presented for resolution in the later federal court action could have been, but was not, submitted to and decided by the state court in the earlier action. But when, as we believe occurred here, issues dispositive of the federal court action have already been litigated and decided against the plaintiff in the earlier state court action, both New York law, which would be applicable here under the McCune-Mitchell approach, and the modified rules of res judicata, developed in this circuit for application in at least some Civil Rights Act cases, follow the generally accepted line of current thinking in barring the plaintiff from relitigating those issues in the federal court action.
 
 
 21
 Our research of the New York state law discloses that the New York courts apply the traditional doctrine of res judicata and a somewhat modified version of the rule of collateral estoppel. For instance, under the New York concept of res judicata a prior judgment is conclusive upon the parties in any subsequent action involving the same cause of action not only as to those issues which were actually litigated but also as to any issues which might have been, but were not, litigated in the earlier action. E. g., Schuykill Fuel Corp. v. B. & C. Nieberg Realty Corp., 250 N.Y. 304, 306-07, 165 N.E. 456, 457 (1929) (Cardozo, C. J.); accord, Erbe v. Lincoln Rochester Trust Co., 3 N.Y.2d 321, 327, 165 N.Y.S.2d 107, 112, 144 N.E.2d 78, 81 (1957); Smith v. Kirkpatrick, 305 N.Y. 66, 70, 111 N.E.2d 209, 211 (1953); Paige v. White Plains Urban Renewal Agency, 51 A.D.2d 733, 733, 379 N.Y.S.2d 126, 127 (2d Dep't 1976); Leonard Park Office Plaza v. P & P Sheet Metal Works, Inc., 51 A.D.2d 537, 538, 377 N.Y.S.2d 637, 638 (2d Dep't), motion for leave to appeal denied, 39 N.Y.2d 705, 384 N.Y.S.2d 1027, 349 N.E.2d 882 (1976). The New York courts appear to recognize that the two lawsuits are based on the "same cause of action" if a "different judgment in the (later action) would destroy or impair rights or interests established by the (earlier action)." Schuykill Fuel Corp. v. B. & C. Nieberg Realty Corp., supra, 250 N.Y. at 307, 165 N.E. at 457; accord, e. g., Erbe v. Lincoln Rochester Trust Co.,supra, 3 N.Y.2d at 327, 165 N.Y.S.2d at 112, 144 N.E.2d at 81. If, however, the two lawsuits are not predicated on "identical" causes of action, the New York concept of collateral estoppel then comes into play. In New York that corollary to the rule of res judicata bars the relitigation of any issue which would be decisive in the later action and which was litigated and decided against the litigant in the earlier action, provided that the resolution of the issue in the earlier case must have been necessary to the judgment there and that the plaintiff must have had a "full and fair opportunity" in the earlier litigation to address the issue now claimed to be decisive in the later action.[9] E. g., Schwartz v. Public Administrator, 24 N.Y.2d 65, 71, 298 N.Y.S.2d 955, 960, 246 N.E.2d 725, 729 (1969).
 
 
 22
 The rules of the "general federal law of res judicata" which have been applied to some Civil Rights Act cases in this circuit are equally well-established. First of all, there is no doubt that the rule of collateral estoppel and a modified version of the doctrine of res judicata can serve to bar a prosecution of a § 1983 Civil Rights action in a federal district court in this circuit after a prior state court adjudication of a similar action. E. g., Williams v. Ward, 556 F.2d 1143, 1153-55 (2d Cir. 1977); Expert Electric, Inc. v. Levine, 554 F.2d 1227, 1236 (2d Cir.), cert. denied,434 U.S. 903, 98 S.Ct. 300, 54 L.Ed.2d 190 (1977); Turco v. Monroe County Bar Association, supra, 554 F.2d at 520-21; Graves v. Olgiati, supra, 550 F.2d at 1329; Newman v. Board of Education, supra, 508 F.2d at 278; Lombard v. Board of Education, supra, 502 F.2d at 635-37; Thistlethwaite v. City of New York, 497 F.2d 339, 341-43 (2d Cir.), cert. denied, 419 U.S. 1093, 95 S.Ct. 686, 42 L.Ed.2d 686 (1974); Lackawanna Police Benevolent Association v. Balen, 446 F.2d 52, 53 (2d Cir. 1971) (per curiam); Tang v. Appellate Division, 487 F.2d 138, 142 (2d Cir. 1973), cert. denied, 416 U.S. 906, 94 S.Ct. 1611, 40 L.Ed.2d 111 (1974). However, despite the fact that the United States Supreme Court has intimated that the doctrine of res judicata may be fully applicable in § 1983 cases, Preiser v. Rodriguez, 411 U.S. 475, 497, 93 S.Ct. 1827, 36 L.Ed.2d 439 (1973); see Williams v. Ward, supra, 556 F.2d at 1153 & n. 4; Turco v. Monroe County Bar Association, supra, 554 F.2d at 521 & n. 9, Lombard and its progeny have refused to permit application of the traditional Draconian formulation of the rule of res judicata[10] but, instead, have adopted a conservative position on the question of whether a § 1983 plaintiff can litigate matters which could have been, but were not, litigated and determined in a prior proceeding. See, e. g., Turco v. Monroe County Bar Association, supra, 554 F.2d at 520-21; Graves v. Olgiati, supra, 550 F.2d at 1328-29; Newman v. Board of Education, supra, 508 F.2d at 278; Lombard v. Board of Education, supra, 502 F.2d at 635-37. Thus, a prior state court proceeding cannot bar federal court consideration of matters which were not actually litigated and determined in that prior proceeding. See, e. g., Graves v. Olgiati, supra, 550 F.2d at 1328-29; Newman v. Board of Education, supra, 508 F.2d at 278; Lombard v. Board of Education, supra, 502 F.2d at 635-37. In essence, then, the doctrine of res judicata, so applied, displays the predominant characteristic of the rule of collateral estoppel.
 
 
 23
 In contrast to the limitations imposed on the traditional doctrine of res judicata, the classical notion[11] of collateral estoppel has, in all respects material here, survived intact and has been treated as fully applicable in Civil Rights cases. See, e. g., Turco v. Monroe County Bar Association, supra, 554 F.2d at 520; Lombard v. Board of Education, supra, 502 F.2d at 636-37; Thistlethwaite v. City of New York, supra, 497 F.2d at 341-43. Thus, a litigant in federal court is precluded from relitigating issues which were litigated and determined adversely to him in the prior state court proceeding, but "for the doctrine of issue preclusion (i. e., collateral estoppel) to be applicable, the determination of the issue must have been necessary to the (prior) decision."[12] Lombard v. Board of Education, supra, 502 F.2d at 637. Moreover, no discussion of the use of the doctrine of collateral estoppel in the Second Circuit cases would be complete without mentioning that, whatever objections might be voiced against applying the doctrine to preclude a federal civil rights plaintiff who was an "involuntary" litigant in a prior state court proceeding, see, e. g., Thistlethwaite v. City of New York, supra, 497 F.2d at 345 (Oakes, J., dissenting); Developments in the Law Section 1983 and Federalism, 90 Harv.L.Rev. 1133, 1339-41 (1977), such application is authorized in this circuit, see, e. g., Turco v. Monroe County Bar Association, supra, 554 F.2d at 520; Thistlethwaite v. City of New York, supra, 497 F.2d at 342-43, and so, in view of this situation, we are not reluctant to apply, nor do we perceive any reasonable objection to applying, the full force of the doctrine of collateral estoppel against a federal civil rights plaintiff who "was not dragged into the state court, (but) freely chose that forum." Tang v. Appellate Division, supra, 487 F.2d at 143; Thistlethwaite v. City of New York, supra, 497 F.2d at 345 (Oakes, J., dissenting) (distinguishing Lackawanna Police Benevolent Association, in part, on ground that "the plaintiff (there) had voluntarily chosen the state court as his initial forum"); Developments in the Law Section 1983 and Federalism, 90 Harv.L.Rev. 1133, 1342 (1977) ("(T)hose (§ 1983) litigants who voluntarily brought their claims in the state courts" should be barred by collateral estoppel because, by choosing "a state forum initially, (they) have waived any right to choose a federal one.").
 
 
 24
 There are two reasons why we believe this case is most suitably analyzed as a case involving the theory of collateral estoppel. First, by doing so we may be able to avoid a definite decision on the often thorny and troublesome question of whether the "causes of action" underlying the two lawsuits are the "same."[13] Second, and more importantly, it is wisest to view the case from the perspective of collateral estoppel because, as to that principle, the "general federal law of res judicata" and the law of New York, which we might be compelled to apply under the requirements of 28 U.S.C. § 1738, are more harmonious than are the respective concepts of res judicata developed under New York case law and the general federal law of res judicata.[14] Specifically, even if, as Winters claimed, her constitutional claim was not considered or decided by the New York courts, application of the New York concept of res judicata would bar her attempt to litigate that issue here if the causes of action in the two suits were the "same," but that very same constitutional claim would not be barred under the version of the rule of res judicata developed in the Lombard line of cases. In conclusion, therefore, we prefer to view the case from the perspective of the discrete issues contained in it and we take it that under either New York law or the Lombard approach Winters must be barred from relitigating any issues which are dispositive of her § 1983 action, were determined against her in the prior Article 78 proceeding, and were "necessary" to the adjudication in that earlier case.
 
 
 25
 Having decided to measure Winters' case against the standards of collateral estoppel, we now turn to the facts before us. Doing so, we find that the judgment entered against Winters in the Article 78 proceeding in which she sought payment for the services of the Christian Science nurse collaterally estops her from relitigating in this § 1983 action here two issues, one of constitutional dimension and the other not, which would necessarily have to be decided in her favor in order for her to obtain the award of Medicaid benefits for the cost of the Christian Science nurse, the relief she sought before the three-judge district court. Specifically, in ruling that "the request for the payment of the cost of Christian Science nursing care was properly denied," 49 A.D.2d at 844, 373 N.Y.S.2d at 605, the Appellate Division relied upon its disposition of two independent issues. First of all, the court considered and expressly rejected the claim that under the New York statutes Christian Science nursing care was an expense covered by the state's Medicaid program. More particularly, by offering as the first ground for its decision upholding the denial of the claim for benefits "the fact that a Christian Science nurse is not classified as a registered nurse (Education Law § 6901 et seq.)," 49 A.D.2d at 844, 373 N.Y.S.2d at 605, the Appellate Division was accepting the statutory argument there advanced by the state that the cost of Christian Science nursing care was not a compensable expense under the New York Medicaid statute because, under that program, benefits could not be awarded for nursing care unless the services were provided by a nurse who was "registered" in New York. Yet, in view of Winters' explicit submission of the constitutional issue to the Appellate Division, the failure of the Christian Science nursing care to satisfy the statutory criteria for compensability under the New York Medicaid statutory program could not serve as a basis for denying Winters the benefits she sought, as the Appellate Division definitely suggested that that failure did, unless the Appellate Division necessarily then proceeded to consider and to reject the first amendment claim which Winters had pressed before that court: a statute operating to deny Medicaid payment for Christian Science nursing care could not, in and of itself, destroy Winters' right to Medicaid benefits if the statute operated in derogation of any of her constitutional rights. It is not significant, moreover, that the Appellate Division's opinion does not allude to the constitutional issue which Winters had clearly submitted to that court for resolution, for, as appellant concedes, it is entirely possible for a court to consider and reject a particular claim presented to it without any express discussion of or allusion to that claim. Indeed, on two recent occasions we have emphasized this very point. "The silence of the (court's) opinion on the constitutional issue is of course immaterial." Tang v. Appellate Division, supra, 487 F.2d at 141 n. 2; accord, Lecci v. Cahn, 493 F.2d 826, 830 (2d Cir. 1974) ("The fact that the affirmances in the state courts were without opinion or without specific reference to the constitutional question is of course immaterial.") As was true in Grubb v. Public Utilities Commission, 281 U.S. 470, 477-78, 50 S.Ct. 374, 377-78, 74 L.Ed. 972 (1930), we find here that "(t)he question of the constitutional validity of the (statute, so construed,) was distinctly presented by (Winters') petition and necessarily was resolved against (her) by the (decision upholding the denial of benefits). Omitting to mention that question in the opinion did not eliminate it from the case or make the judgment of affirmance any less an adjudication of it." We thus hold that the precise constitutional issue which Winters sought to litigate before the federal three-judge court had already been decided, albeit sub silentio, adversely to her by New York's Appellate Division.
 
 
 26
 We also reject any suggestion that the dismissal of Winters' appeal to the New York Court of Appeals "upon the ground that no substantial constitutional question (was) directly involved" supports Winters' position that the Appellate Division's decision did not rest on any constitutional grounds. While we think it clear that under the circumstances here Winters did not have an appeal as of right to the Court of Appeals, and that, by dismissing as it did, the Court of Appeals never considered or ruled upon the purported constitutional issue Winters raised in her brief there, our examination of New York law reveals that the reason for the dismissal by the Court of Appeals was not that the Appellate Division had failed to base its decision on any constitutional grounds but, instead, that the New York lower court's decision rested upon alternative grounds, one of which Winters concedes was not constitutional in character. More particularly, § 5601 of the New York Civil Practice Laws and Rules ("N.Y.C.P.L.R.") describes those circumstances under which an appeal as of right may be taken to the Court of Appeals. The specific provision under which Winters attempted to appeal was § 5601(b)(1) which permits an appeal as of right "from an order of the appellate division which finally determines an action where there is directly involved the construction of the constitution of the state or of the United States." (Emphasis supplied). The Court of Appeals often dismisses appeals brought pursuant to § 5601(b)(1) because "no substantial constitutional question is directly involved," see, e. g., Edde v. Columbia University, 5 N.Y.2d 881, 882, 182 N.Y.S.2d 829, 829, 156 N.E.2d 458, 458, cert. denied, 359 U.S. 956, 79 S.Ct. 744, 3 L.Ed.2d 763 (1959), or since "no constitutional question is directly involved," see, e. g., Kuhn v. Commissioner of Education, 2 N.Y.2d 749, 750, 157 N.Y.S.2d 383, 384, 138 N.E.2d 742, 742 (1956). Although such dismissals are made for several reasons, one of the more common reasons for such a dismissal is that the Appellate Division's decision was based, or may have been based, as it was in the instant case, on alternative grounds, each of which is sufficient to support the judgment and at least one of which is not of constitutional dimension. Haydorn v. Carroll, 225 N.Y. 84, 88, 121 N.E. 463, 464 (1918); accord, People ex rel. Ryan v. Lynch, 262 N.Y. 1, 4, 186 N.E. 28, 29 (1933); In re Levy, 255 N.Y. 223, 226, 174 N.E. 461, 462 (1931); see Local 824, International Longshoremen's Association, (Ind.) v. Waterfront Commission, 6 N.Y.2d 861, 188 N.Y.S.2d 562, 160 N.E.2d 93, cert. denied, 361 U.S. 835, 80 S.Ct. 87, 4 L.Ed.2d 76 (1959); id. at 862, 160 N.E.2d at 94, 188 N.Y.S.2d at 563 (dissenting opinion). In such circumstances the appellant has the "burden of presenting to (the Court of Appeals) a record which establishes that such construction (of the Constitution) has been not only directly but necessarily involved in the decision of the case. If the decision has or may have been based upon some other ground, the appeal will not lie." Haydorn v. Carroll, supra, 225 N.Y. at 88, 121 N.E. at 464.
 
 
 27
 We thus think that the ruling by the Court of Appeals dismissing the appeal brought there is entirely consistent with, and, in fact, supportive of, our determination, discussed more fully later in this opinion, that the Appellate Division's decision rested on both constitutional and nonconstitutional grounds. As appears from the preceding discussion, the real significance of the Court of Appeals' decision is that, in view of the alternative bases for the decision below, the Court of Appeals did not reach the merits of any constitutional issues raised[15] because Winters did not possess the right to appeal under N.Y.C.P.L.R. § 5601(b)(1). Although Winters does not raise the point, in the interest of thoroughness we should point out that her inability to appeal as of right the Appellate Division's decision does not detract from the preclusive effect which should be accorded to it.
 
 
 28
 We believe that there are two reasons why the Appellate Division's decision should retain its preclusive effect despite Winters' inability to appeal from it as of right. First, even if there were no opportunity whatsoever for Winters to appeal the Appellate Division's ruling, that decision would still retain its preclusive effect, for the extent of preclusion produced by a prior judicial determination of material and essential issues is not affected by the fact that the losing party could not appeal that determination to a higher court. Johnson Co. v. Wharton, 152 U.S. 252, 256-57, 260-61, 14 S.Ct. 608, 38 L.Ed. 429 (1894); Ex parte Pennsylvania, 109 U.S. 174, 176, 27 L.Ed. 894 (1883); Napper v. Anderson, Henley, Shields, Bradford & Pritchard, 500 F.2d 634, 636-37 (5th Cir. 1974), cert. denied,423 U.S. 837, 96 S.Ct. 65, 46 L.Ed.2d 56 (1975); Elk Garden Co. v. T. W. Thayer Co., 206 F. 212, 215 (W.D.Va.1913), writ of error dismissed with consent of defendant in error, 228 F. 1021 (4th Cir. 1915). Of comparable importance, although Winters had no guaranteed right of appeal to the New York Court of Appeals, she had, nonetheless, an opportunity for appealing the Appellate Division's decision by obtaining under N.Y.C.P.L.R. § 5602(a)(1)(i) leave to appeal from either that court or the Court of Appeals itself. It is apparently true that under the circumstances here the Court of Appeals could not directly review the finding of fact made by the Appellate Division that Winters, inasmuch as she had not proven that she had been ill or had received treatments of a particular nature, was not entitled to benefits for the alleged care provided by the Christian Science nurse. See N.Y.C.P.L.R. § 5501(b). Yet, she could certainly have challenged, as a matter of law, the Appellate Division's reliance on a ground not expressly set forth[16] as a basis for the administrative agency's decision. Further, she could have presented anew the first amendment issue on such an appeal to the Court of Appeals. We thus conclude that Winters, by not exercising her right to seek leave to appeal to the Court of Appeals, and thereby having neglected to do everything she could have done to secure review by the New York Court of Appeals, must be regarded as having failed to appeal. Her failure to do so thus provides an additional reason why the Appellate Division's decision should retain its preclusive effect despite Winters' inability to appeal from it as of right. Cf. Angel v. Bullington, 330 U.S. 183, 189-90, 67 S.Ct. 657, 91 L.Ed. 832 (1947); Hubbell v. United States, 171 U.S. 203, 210, 18 S.Ct. 828, 43 L.Ed. 136 (1898); Restatement of Judgments § 69, Comment (c) (1942).
 
 
 29
 Even if it were to be assumed that the Appellate Division did not actually reach and reject Winters' explicit first amendment argument, the Appellate Division's decision nonetheless still serves to bar Winters' attempt in the instant § 1983 action to litigate that underlying constitutional question, for the Appellate Division addressed a second issue, one raised by the respondent governmental officials there, and offered its disposition of that issue as an alternative ground for its holding that "the request for the payment of the cost of Christian Science nursing care was properly denied."49 A.D.2d at 844, 373 N.Y.S.2d at 605. That alternative issue was whether Winters had "demonstrated that she (personally was) entitled to payments pursuant to Social Services Law § 365-a" by producing sufficient evidence "in the record to indicate either the nature of her illness or of the treatment she received." 49 A.D.2d at 844, 373 N.Y.S.2d at 605. The Appellate Division held that Winters had not made such a demonstration. Thus, that court was holding, in effect, that the state officials had an independent basis, quite apart from any blanket exclusion of Medicaid payments for Christian Science nursing care claims, for denying this particular request for medical assistance benefits.
 
 
 30
 Of course, regardless of the constitutional theory upon which she might rely in federal court in asserting that the state officials must bear the cost of the Christian Science nursing care she received, Winters' claim for benefits here can always be defeated if it can be established that she would not have been awarded those benefits even in the absence of what we can assume arguendo is an unconstitutional blanket exclusion of Medicaid benefits for Christian Science nursing care.[17] To be sure, it appears to have been true until very recently that if a § 1983 plaintiff could show that the governmental action against which he was seeking redress was "motivated only in part," Simard v. Board of Education, 473 F.2d 988, 995 (2d Cir. 1973), by the defendants' illegitimate reliance upon constitutionally improper considerations, then the plaintiff's claim of deprivation of constitutional rights was not necessarily defeated by the facts that the defendant governmental officials also had independent, constitutionally inoffensive grounds for acting against the plaintiff and that those defendant government officials would have taken the same action regarding the plaintiff even if they had not been inspired to act, in part, for reasons that were constitutionally impermissible. See, e. g., id., at 995;[18] Roseman v. Indiana University of Pennsylvania, at Indiana, 520 F.2d 1364, 1367 (3d Cir. 1975), cert. denied, 424 U.S. 921, 96 S.Ct. 1128, 47 L.Ed.2d 329 (1976). But this is no longer a valid portrayal of the law, for in two significant recent cases, Mt. Healthy City School District Board of Education v. Doyle, 429 U.S. 274, 97 S.Ct. 568, 50 L.Ed.2d 471 (1977) and Village of Arlington Heights v. Metropolitan Housing Development Corp., 429 U.S. 252, 97 S.Ct. 555, 50 L.Ed.2d 450 (1977), the Supreme Court has categorically stated that, despite the fact that the defendant governmental officials may have acted, in part, for reasons that do not comport with the requirements of the United States Constitution, the plaintiff's claim that his constitutional rights have been abridged cannot be sustained if the defendant governmental officials demonstrate that they "would have reached the same decision as to (the action to be taken regarding the plaintiff) even in the absence of (their reliance upon constitutionally impermissible factors.)" Mt. Healthy City School District Board of Education v. Doyle, supra, 429 U.S. at 287, 97 S.Ct. at 576; accord, Village of Arlington Heights v. Metropolitan Housing Development Corp., supra, 429 U.S. at 270-71 n. 21, 97 S.Ct. 555.[19]
 
 
 31
 It was in Mt. Healthy that this concept was critical to the disposition of the case and in the Court's opinion we find a thorough explication of the philosophy supporting such a rule. The plaintiff in Mt. Healthy was a former schoolteacher who, it appears, had been denied tenure in part because he had uttered some constitutionally protected remarks and also because he had used obscene gestures in dealing with certain uncooperative students. While finding that "there did exist in fact reason . . . independent of any First Amendment rights or exercise thereof, to not extend tenure," 429 U.S. at 285, 97 S.Ct. at 574, the district court had, nonetheless, ruled in the teacher's favor. Although the Sixth Circuit had ratified this reasoning by "affirm(ing) in a brief per curiam opinion," id. at 283, 97 S.Ct. at 574, the Supreme Court, in ruling unanimously to vacate the judgment, took a different view of the matter. Noting the obvious, and illogical, advantage the district court's approach conferred upon the constitutional claimant over another person against whom the defendant governmental officials had similar grounds for action, save the constitutionally impermissible one, the Court stated, 429 U.S. at 285-86, 97 S.Ct. at 575:
 
 
 32
 One plausible meaning of the court's statement is that the Board and the Superintendent not only could, but in fact would have reached that decision had not the constitutionally protected incident of the telephone call to the radio station occurred. We are thus brought to the issue whether, even if that were the case, the fact that the protected conduct played a "substantial part" in the actual decision not to renew would necessarily amount to a constitutional violation justifying remedial action. We think that it would not.
 
 
 33
 A rule of causation which focuses solely on whether protected conduct played a part, "substantial" or otherwise, in a decision not to rehire, could place an employee in a better position as a result of the exercise of constitutionally protected conduct than he would have occupied had he done nothing. The difficulty with the rule enunciated by the District Court is that it would require reinstatement in cases where a dramatic and perhaps abrasive incident is inevitably on the minds of those responsible for the decision to rehire, and does indeed play a part in that decision even if the same decision would have been reached had the incident not occurred. The constitutional principle at stake is sufficiently vindicated if such an employee is placed in no worse a position than if he had not engaged in the conduct. A borderline or marginal candidate should not have the employment question resolved against him because of constitutionally protected conduct. But that same candidate ought not to be able, by engaging in such conduct, to prevent his employer from assessing his performance record and reaching a decision not to rehire on the basis of that record, simply because the protected conduct makes the employer more certain of the correctness of its decision.
 
 
 34
 The Court then summarized the respective burdens which must be borne by the parties, echoing an approach espoused that very day in Village of Arlington Heights as well:[20]
 
 
 35
 Initially, in this case, the burden was properly placed upon respondent to show that his conduct was constitutionally protected, and that this conduct was a "substantial factor" or, to put it in other words, that it was a "motivating factor" in the Board's decision not to rehire him. Respondent having carried that burden, however, the District Court should have gone on to determine whether the Board had shown by a preponderance of the evidence that it would have reached the same decision as to respondent's reemployment even in the absence of the protected conduct.
 
 
 36
 429 U.S. at 287, 97 S.Ct. at 576 (footnote omitted).
 
 
 37
 Applying the principles set forth in Mt. Healthy to the case before us now, it is clear that if there existed a constitutionally permissible reason, independent of any express or implied statutory exclusion of benefits for Christian Science nursing services, which would have served as the basis for denying Winters' request that the defendants authorize Medicaid payments for the Christian Science nursing care provided her, then Winters' § 1983 claim based on an alleged deprivation of her constitutional right to the free exercise of religion must fail; and the district court below could not have awarded her the Medicaid benefits she sought in her federal action. In ruling that Winters, by not advancing sufficient proof regarding the nature of her illnesses or of the treatments she had received, had not demonstrated her entitlement to benefits, the Appellate Division, in essence, found that Winters would not have been awarded those benefits even if there had been no blanket exclusion of benefits for treatments administered by Christian Science nurses.[21] In view of the Appellate Division's holding on this issue, Winters is barred by the doctrine of collateral estoppel from relitigating here the existence of this alternative ground for denying Medicaid benefits. We therefore must take as established fact between the parties here the existence of such an inescapable denial of benefits and must conclude that, under the rule pronounced in Mt. Healthy, this fact alone, without reference to whether a blanket exclusion of Medicaid payments for Christian Science nursing services is constitutionally invalid, defeats Winters' § 1983 cause of action.
 
 
 38
 Finally, irrespective of whether we apply New York law or the " general federal theory of res judicata," we do not believe that the applicability of the doctrine of collateral estoppel is affected by the fact that the Appellate Division's decision rested on alternative grounds. It is true that the doctrine of collateral estoppel only bars the relitigation of issues which were not only actually litigated and determined in the original action but which were also "necessary" to the judgment entered in that suit. E. g., Lombard v. Board of Education, supra, 502 F.2d at 637; Restatement of Judgments § 68 (1942). Under the circumstances here, however, where the existence of an independent basis for denying coverage was an alternative, rather than an exclusive, ground for the Appellate Division's decision, neither that issue nor the constitutional issue previously discussed was "unnecessary." This is so because "(w)here the judgment is based upon the matters litigated as alternative grounds, the judgment is determinative on both grounds, although either alone would have been sufficient to support the judgment." Restatement of Judgments § 68, Comment n (1942); accord, 1B Moore's Federal Practice P 0.443, at 3921-22 (1965); MacAffer v. Boston & M. R. R., 268 N.Y. 400, 403, 197 N.E. 328, 329 (1935); Sheldon v. Edwards, 35 N.Y. (8 Tiffany) 279, 286-89 (1866); Restatement of Judgments § 69, Comment b (1942); id. § 49, Comment c; see Williams v. Ward, supra, 556 F.2d at 1154. Though in certain narrow circumstances, we in the Second Circuit have refused to apply this principle, see, e. g., Halpern v. Schwartz, 426 F.2d 102 (2d Cir. 1970), we think it evident that even in this circuit the rule has continuing viability in circumstances divergent from those in Halpern.
 
 
 39
 First of all, it is apparent from the opinion in Halpern v. Schwartz, supra, that the result we reached there was not intended to have, without careful case-by-case extension in the future, broad impact outside the specific context, bankruptcy proceedings, in which the issue presented there was resolved. In particular, the intended narrowness of that decision, a decision which has been recognized as going against the trend of the modern cases which have tended to expand rather than constrict the scope of the doctrine of collateral estoppel, see Stebbins v. Keystone Insurance Co., 156 U.S.App.D.C. 326, 332, 481 F.2d 501, 507 (1973), is evident throughout the opinion from our initial restriction of the case to "the facts before us (there)," 426 F.2d at 105, from our justification of the holding there on the basis of policy factors which, if not unique to, are at least more pronounced in the context of bankruptcy litigation than in other contexts[22] and from our careful articulation of the precise holding we reached there.[23]
 
 
 40
 Secondly, the narrowness of the decision in Halpern v. Schwartz, manifest from the opinion itself, has also recently been confirmed by Judge Friendly in Williams v. Ward, supra, 556 F.2d at 1154. Writing for himself and Judge Mulligan, Judge Friendly first emphasized what was explicitly stated in Halpern, that the decision there was limited to "the facts before us." Of comparable importance is Judge Friendly's citation to an old case from this circuit, Kessler v. Armstrong Cork Co., 158 F. 744, 747-48 (2d Cir. 1907), cert. denied, 207 U.S. 597, 28 S.Ct. 262, 52 L.Ed. 357 (1908), as a case to be "contrast(ed)" with Halpern. Indeed, Kessler does stand in "contrast" to Halpern, for Kessler stands for the traditional proposition that an alternative ground upon which a decision is based should be regarded as "necessary" for purposes of determining whether the plaintiff is precluded by the principles of res judicata or collateral estoppel from relitigating in a subsequent lawsuit any of those alternative grounds. We thus take it that Kessler, hoary though it may be, still represents good law in this circuit, and that Halpern v. Schwartz is to be read as an exception to the principle expressed in Kessler. Most importantly, though, beyond the intended limited application of the decision in Halpern v. Schwartz, Williams v. Ward also distinguished Halpern on a ground which renders Halpern distinguishable from the case now before us as well. As Judge Friendly stated in Williams v. Ward, supra, 556 F.2d at 1154, "we see no reason to depart from (the rule that a decision based on alternative grounds bars relitigation of any of those grounds) in an instance where the plaintiff was pursuing the two actions simultaneously and thus could fully anticipate the potential barring effect of the earlier judgment in deciding not to appeal from (that decision)." Here, as was true of Williams in Williams v. Ward, supra, Winters "was prosecuting both actions at once," id., and thus "(t)he concern noted by the court (in Halpern v. Schwartz ), that a debtor would be forced to clairvoyant anticipation of the effects of determined issues 'on future indeterminate collateral litigation, which neither party can be sure will occur,' and would be forced to take cautionary appeals even when the later litigation might never occur, is clearly not applicable here." Williams v. Ward, supra, 556 F.2d at 1154. The alternative concern of Halpern v. Schwartz which Judge Friendly found to be unrealistic under the circumstances present in Williams v. Ward, namely, that " 'an issue not essential to the prior judgment may not have been afforded the careful deliberation and analysis normally applied to essential issues,' " 556 F.2d at 1154, quoting Halpern v. Schwartz, 426 F.2d at 105, is not so easily dispelled here as it was in Williams v. Ward. There, the alternative basis under examination not only had been fully briefed but had also been discussed "at length" in the first court's decision. Yet, given the narrowness of the holding in Halpern v. Schwartz and the presence here of the simultaneous actions pursued by Winters (the factor deemed most critical in Williams v. Ward ), we choose to eschew any assumption that five distinguished jurists of the Appellate Division failed to accord to the two issues resolved by their decision "the careful deliberation and analysis normally applied to essential issues." We thus deem it most advisable to adhere to traditional principles, and consequently we do not deprive the Appellate Division's decision of preclusive effect.
 
 
 41
 In summary then, we hold that the Appellate Division's decision bars Winters from relitigating here in the context of a § 1983 suit the issue of the constitutionality of the denial of Medicaid benefits for the services of a Christian Science nurse.[24] We do so inasmuch as that very issue was determined adversely to her by the Appellate Division, and also inasmuch as the Appellate Division ruled against Winters on the threshold question of whether there was an independent ground, peculiar to Winters' case, relative to whether she should have the state pay the specific benefits she sought to have the state pay.
 
 II
 
 42
 Winters next claims that the court below should not have abstained from deciding the first amendment issue presented by the so-called " practitioner claim." While we believe it to be a very close question, we think that, on balance, the three-judge district court was correct in invoking the well-known Pullman doctrine and thereby deferring consideration of the first amendment issue until the state courts, in the Article 78 proceeding then and now pending in the New York State Supreme Court, New York County, have had the opportunity to determine whether treatments administered by Christian Science practitioners are compensable medical expenses under the New York Medicaid statutes. We therefore affirm the district court's decision to abstain and we do so generally for the reasons set forth in the district court's opinion.
 
 
 43
 While a litigant wishing to vindicate his federal constitutional rights has a "right to have (those claims) adjudicated by a federal tribunal," McRedmond v. Wilson, 533 F.2d 757, 760 (2d Cir. 1976), it is equally well-understood that a federal court presented with such claims will under certain circumstances have a duty to postpone consideration of the federal constitutional claims until the state courts have had an opportunity to consider other issues inherent in the lawsuit. The seminal case in the area is Railroad Commission v. Pullman Co., 312 U.S. 496, 61 S.Ct. 643, 85 L.Ed. 971 (1941). "There (, the Supreme) Court held that in special circumstances, where resolution of a federal constitutional issue is controlled by the interpretation of an unclear or complex state statute that is susceptible to a construction which would avoid or modify the necessity of a constitutional adjudication, the federal court should defer to the state court's interpretation of its own statute." McRedmond v. Wilson, supra, 533 F.2d at 760. We have recognized that the significant policies which are advanced by application of the Pullman doctrine are "the avoidance of federal-state friction, the recognition that regardless of a federal court's construction, the state's highest court is the final expositor of that state's law, and the possibility that the federal (constitutional) question may be avoided." Id. at 761. The cases in which application of the Pullman doctrine is appropriate are those in which these formidable policy factors "outweigh the duplication of effort and added expense and delay heaped upon the plaintiff by shuttling him between state and federal courts." Id. We also explained in McRedmond that there are "three essential conditions for invocation of the doctrine of abstention (: (1)) that the state statute be unclear or the issue of state law be uncertain, ((2)) that resolution of the federal issue depend upon the interpretation to be given to the state law, and ((3)) that the state law be susceptible of an interpretation that would avoid or modify the federal constitutional issue." Id. (citations omitted).
 
 
 44
 Applying the McRedmond standards, we quickly note that the second condition is obviously satisfied here. If the state courts determine that under the New York Medicaid statute benefits can be provided for treatments administered by Christian Science practitioners, then there would be no need for the federal court to reach and decide the constitutional issue of whether statutory exclusion of such treatments from Medicaid coverage would violate the first and fourteenth amendments. Thus, as in Reid v. Board of Education, 453 F.2d 238, 242 (2d Cir. 1971) and in contrast to the situation confronting us in McRedmond v. Wilson, supra, 533 F.2d at 763, and facing the Supreme Court in Zwickler v. Koota, 389 U.S. 241, 249-50, 88 S.Ct. 391, 19 L.Ed.2d 444 (1967), one conceivable resolution of the question of state law by the state courts here would allow the federal court to avoid "entirely the necessity of resolving the (constitutional claim)." McRedmond v. Wilson, supra, 533 F.2d at 763.
 
 
 45
 Whether the other two conditions delineated in McRedmond are met is not so apparent. We conclude, though not without some hesitation, that the interpretation of state law is uncertain under the circumstances here. To be sure, if we were to venture a "forecast," Carey v. Sugar, 425 U.S. 73, 77, 96 S.Ct. 1208, 47 L.Ed.2d 587 (1976) (per curiam); Boehning v. Indiana State Employees Association, Inc., 423 U.S. 6, 7, 96 S.Ct. 168, 46 L.Ed.2d 148 (1975) (per curiam), we might well conclude, as did Judge Dooling in his dissent in the court below, that the New York Medicaid statute does not provide benefits for treatments administered by Christian Science practitioners. The statute would seem to allow payment for such services only if the practitioners were, as definitely required by federal regulations and perhaps arguably contemplated under the state regulations, licensed under state law, and in New York the Christian Science practitioners are not so licensed. But the recent controlling cases in the area of abstention seem to be saying that our ability to "forecast," Carey v. Sugar, supra, 425 U.S. at 77, 77-79, 96 S.Ct. 1208; Boehning v. Indiana State Employees Association, Inc., supra, 423 U.S. at 7, 96 S.Ct. 168, how the issue of state law would be interpreted does not foreclose further inquiry into whether, for the purpose of determining whether abstention should be invoked, the state statute is sufficiently "unclear" or its interpretation "uncertain." Pursuing such inquiry, we conclude that the interpretation of the state law can fairly be said to be "uncertain."
 
 
 46
 First of all, as was true in Reetz v. Bozanich, 397 U.S. 82, 86, 90 S.Ct. 788, 25 L.Ed.2d 68 (1970), and in Reid v. Board of Education, supra, 453 F.2d at 243, "we are not aware of any state court decision" interpreting N.Y. Soc. Serv. Law § 365-a with reference to the inclusion or exclusion from coverage of payment for the treatments administered by Christian Science practitioners. Indeed, this is one of the express grounds upon which we distinguished the facts in McRedmond, where invocation of abstention was found to be objectionable, from the facts in Reid, where abstention was considered appropriate. McRedmond v. Wilson, supra, 533 F.2d at 763.
 
 
 47
 Secondly, we agree with the district court below that it cannot be said with absolute certitude that the New York Medicaid statute precludes payment for the cost of treatments administered by Christian Science practitioners. While it is true that the pertinent federal regulations would appear to disallow reimbursement for such services, inasmuch as the practitioners are not "licensed" under New York state law, see 45 C.F.R. §§ 249.10(b)(5), (6), (13) (iv), New York's inability to obtain federal funding does not prove that such expenses are noncompensable under New York law, for "(t)here is no legal prohibition . . . preventing the Legislature of New York . . . from awarding (Medicaid) relief on its own, independent of Federal reimbursement." Dallas v. Lavine, 79 Misc.2d 395, 400, 358 N.Y.S.2d 297, 302 (Sup.Ct. Westchester County 1974). When we examine, as we must, the language of the New York statute, we find, as did both the majority and the dissenter below, that the New York Medicaid statute does not preclude compensation for the services of a Christian Science practitioner. But, in dissent, Judge Dooling concluded that the crucial point was that the New York statute did not contemplate such an award either. This conclusion was derived from the judge's examination of the state regulations implementing the Medicaid statute, Judge Dooling gleaning from those regulations an intent on the part of the state to pay benefits only for services performed by "qualified" medical personnel. From this the judge inferred that the only services which could be compensated out of state Medicaid funds were those rendered or supervised by "licensed practitioners or practitioners approved by medical or kindred societies." This is certainly not an unreasonable construction of the state statute and regulations, but it is not the only conceivable construction which might be made. More particularly, as explained by the majority below, "medical assistance" under the state program is available to pay for "the cost of care, services and supplies which are necessary to prevent, diagnose, correct or cure conditions in the person that cause acute suffering, endanger life, result in illness or infirmity, interfere with his capacity for normal activity, or threaten some significant handicap." N.Y. Soc. Serv. Law § 365-a(2). While § 365-a(2) then goes on to describe some of the "care, services and supplies" for which Medicaid payment may be made, the listing is, by its own terms, not intended to be an exclusive one. Thus, the fact that there is no mention in that list of the services of Christian Science practitioners does not prove that New York precludes Medicaid payment for such services. To the contrary, the very breadth of the general description of the type of services for which compensation can be paid raises the possibility that the services of Christian Science practitioners may be compensable under § 365-a(2). While Judge Dooling's "forecast," based upon his careful and comprehensive review of the state Medicaid regulations, may turn out to be correct, we believe that in the circumstances here where there is no express prohibition in the state statute itself; where there is no categorical limitation, as there is in the federal regulations, to services performed by licensed individuals only; and where one conceivable construction of the statute would permit payment for the services of a Christian Science practitioner it is not inappropriate to allow the state courts to analyze initially the labyrinth of state regulations which, as Judge Dooling believed, may well determine whether the services of Christian Science practitioners are compensable under the New York Medicaid program.
 
 
 48
 Third, and perhaps of greatest importance, the state Department of Social Services on one occasion granted one of Winters' requests for benefits for the services rendered by a Christian Science practitioner, and we think that this is a significant reason for finding that the interpretation of state law is a matter of some doubt. Indeed, the circumstances here seem to be precisely those that were missing in Ohio Bureau of Employment Services v. Hodory, 431 U.S. 471, 97 S.Ct. 1898, 52 L.Ed.2d 513 (1977). There, the amicus labor union suggested that Pullman abstention was appropriate because steelworkers other than the appellee there had been "laid off at the same time as appellee and assertedly for the same reason, and yet they were awarded unemployment compensation," id. at 1904, while appellee had not been awarded such benefits. The Supreme Court found, however, that the fact that other steelworkers had been granted unemployment compensation was readily explained by the fact that the plants at which those workers were employed were not similarly situated to the plant where appellee had worked. Thus, in Hodory the differing administrative determinations there were not necessarily incompatible with each other and certainly did not demonstrate that the interpretation of state law was "uncertain" or that there was any basis, other than sheer speculation, for surmising that if appellee there were to pursue the same administrative channels as had steelworkers from dissimilar plants, his claim would be decided as favorably as were their claims. Unlike the situation in Hodory, however, Winters herself, upon her initial request, was granted Medicaid benefits for the services rendered by the Christian Science practitioners but was denied benefits when she submitted a subsequent request which was indistinguishable from the previous one. When the state agency principally charged with administration of the Medicaid program, and presumably most conversant with the intricate statutory provisions and regulations under which the program operates, rules in such patently contradictory fashion, then there is surely good reason to say that the interpretation of the state law is "uncertain" and, furthermore, that the "state law (is, in fact,) susceptible of an interpretation that would avoid (completely) the federal constitutional issue." McRedmond v. Wilson, supra, 533 F.2d at 761.
 
 
 49
 In addition to the arguable satisfaction of the McRedmond conditions, we perceive two other reasons why the district court's decision to abstain was not an improper one. First, in deciding that abstention was not appropriate in McRedmond v. Wilson, we relied upon the fact that the issues of state and federal law were not, as they were in Reid v. Board of Education, "separate and distinct." McRedmond v. Wilson, supra, 533 F.2d at 763. The structuring of the issues here is, however, like that in Reid rather than like that in McRedmond. The state and federal claims are "separate and distinct" and Winters' right to have the federal court decide her constitutional issues is sufficiently protectable and preservable. A further distinction between McRedmond and Reid is also of critical importance here. While in Reid "(t) here (were) presently pending two cases in the (New York courts) which (might have borne) heavily on the state claims available to appellants (there)," Reid v. Board of Education, supra, 453 F.2d at 243 n. 9, such was not the case in McRedmond. The manifest importance of the existence of relevant cases already pending in the state courts is that some of the significant policy reasons weighing against employing the doctrine of abstention namely, the salutary desire to avoid "the duplication of effort and added expense and delay heaped upon the plaintiff by shuttling him between state and federal courts," McRedmond v. Wilson, supra, 533 F.2d at 761 are seriously undermined. Specifically, inasmuch as the state court action is already pending, a decision by the federal court to abstain will not create duplication of effort; that quite obviously already exists. And where the federal court plaintiff is also the moving party in the state court action, he has already voluntarily assumed the added expense of conducting parallel lawsuits and the federal court's decision to abstain does not coerce him into doing so. In short, we agree with then Judge, now Chief Judge, Kaufman's observation in Reid that "(a)lthough the abstention doctrine does not depend upon the pendency of a state court action, there is greater reason to abstain when a state court decision may be imminent." Reid v. Board of Education, supra, 453 F.2d at 243 n. 9 (citation omitted).
 
 
 50
 We therefore conclude that the district court had legitimate grounds for abstaining here and it was justified in doing so.
 
 
 51
 The decision of the district court is affirmed.
 
 
 
 *
 Of the Southern District of Florida, sitting by designation
 
 
 [1]
 Winters initially appealed directly to the United States Supreme Court but, as we note later, that court entered the following order on December 13, 1976:
 Judgment vacated and case remanded to the United States District Court for the Eastern District of New York with directions to enter a fresh decree from which a timely appeal may be taken to the United States Court of Appeals for the Second Circuit.
 Winters v. Lavine, 429 U.S. 1012, 97 S.Ct. 634, 50 L.Ed.2d 621 (1976). The three-judge court complied with the terms of this command and Winters then filed a timely notice of appeal to this court.
 
 
 [2]
 The prior state court case is Winters v. Commissioner of New York State Dep't of Social Services, 49 A.D.2d 843, 373 N.Y.S.2d 604 (1st Dep't 1975), appeal dismissed, 39 N.Y.2d 832, 385 N.Y.S.2d 1029, 351 N.E.2d 441, appeal dismissed and cert. denied, 429 U.S. 1011, 97 S.Ct. 634, 50 L.Ed.2d 620 (1976)
 
 
 [3]
 By way of explanation as to why Winters did not appear at the hearing and as to what transpired at that hearing, the appellees state in their brief in this court:
 Allegedly because of her reclusive habits, appellant did not appear at the hearing requested by her nor did she want a home hearing which was offered ((Hearing Minutes pg. 3)). The only testimony on her behalf was given by her attorney, the counsel below and on this appeal. There was no actual proof of the rendition of any nursing services other than her attorney's attempt to buttress the claim by his own assertions.
 Although the hearing minutes to which reference is made are apparently not a part of the record now before us, we think it relatively certain that Winters' failure to appear at the hearing she had requested was attributable, as claimed by the appellees, to an obsessive fear of contact with the outside world. Indication of this can be gleaned from an affidavit which Winters submitted in support of her motion to transfer the civil action here from the Southern District of New York, where Winters' attorney originally filed the suit on her behalf, to the Eastern District of New York. As grounds for requesting such a transfer, Winters stated in her affidavit:
 
 
 [2]
 I live at the St. George Hotel, 51 Clark Street, Brooklyn, New York. I've lived here since 1968
 
 
 [3]
 I have not left my hotel since then. I am afraid to leave the hotel and I only feel comfortable here, because of New York. Any trip outside my home is a frightening experience and deeply upsets me. While my attorney has been successful in getting me to submit to one deposition held here in my hotel, in a different action, that experience was most unsettling and I still feel upset from it. I have, after much coaxing, and because of the importance of the suit, agreed to go to court in Brooklyn, if necessary, but I will never go to the borough of Manhattan for any purpose, as that borough arouses great anxiety and fear in me. The travel is too much. Manhattan is the scene where terrible traumatic experiences took place in the past. I cannot and will not go. A trip across the street to Brooklyn Federal Court is horrible enough but to Manhattan is impossible. I implore this Court to change this case to Brooklyn so I can follow my case
 
 
 [4]
 New York Civil Practice Laws and Rules (hereinafter N.Y.C.P.L.R.) §§ 7801-06
 
 
 [5]
 Winters had actually sought to have the state pay $90.00 but she did not contest the state's award to her of but $70.00. Interestingly, we infer from the compensatory damages of $431.66 she seeks in federal court that this sum includes the $70.00 which she has already been awarded by the state but not the $20.00 the state denied her
 
 
 [6]
 The district court also found that Winters' claims based upon alleged violations of various federal and state regulations were lacking in merit. We shall not discuss the district court's disposition of these matters. We agree with the court's reasoning when disposing of them, and, in any event, Winters apparently does not directly contest the district court's disposition in this regard
 
 
 [7]
 We do not agree, however, with all the reasoning which the district court used in reaching its decision. In particular, the district court seems to have misconstrued the pertinent New York law on the doctrine of collateral estoppel. See note 24 infra
 
 
 [8]
 28 U.S.C. § 1738 provides, in pertinent part:
 The records and judicial proceedings of any court of any such State, Territory or Possession, or copies thereof, shall be proved or admitted in other courts within the United States and its Territories and Possessions by the attestation of the clerk and seal of the court annexed, if a seal exists, together with a certificate of a judge of the court that the said attestation is in proper form.
 Such Acts, records and judicial proceedings or copies thereof, so authenticated, shall have the same full faith and credit in every court within the United States and its Territories and Possessions as they have by law or usage in the courts of such State, Territory or Possession from which they are taken.
 
 
 [9]
 See note 14 infra
 
 
 [10]
 In its traditional formulation, the rule of res judicata can have dramatic impact:
 "The general rule of res judicata is that a valid, final judgment, rendered on the merits, constitutes an absolute bar to a subsequent action between the same parties, or those in privity with them, upon the same claim or demand. It operates to bind the parties both as to issues actually litigated and determined in the first suit, and as to those grounds or issues which might have been, but were not, actually raised and decided in that action. The first judgment, when final and on the merits, thus puts an end to the whole cause of action."
 Saylor v. Lindsley, 391 F.2d 965, 968 (2d Cir. 1968) (emphasis supplied); accord, e. g., Grubb v. Public Utilities Commission, 281 U.S. 470, 479, 50 S.Ct. 374, 74 L.Ed. 972 (1930); Sanchez v. Caribbean Carriers Ltd., 552 F.2d 70, 72-73 (2d Cir. 1977). Analyzed under such a stringent standard, Winters' contention that her § 1983 suit is not barred by the principles of res judicata would probably warrant only brief comment. See also note 13 infra.
 
 
 [11]
 We should mention, of course, that in recent years the notion of which we speak has undergone one substantial mutation in this circuit as well as elsewhere. Specifically, "(i)n the wake of Bernhard (v. Bank of America National Trust & Savings Association, 19 Cal.2d 807, 122 P.2d 892 (1942)), the great majority of the courts, both state and federal, (have) elected to jettison the . . . requirement (of mutuality of estoppel)." State of North Carolina v. Chas. Pfizer & Co., 537 F.2d 67, 73 (4th Cir.), cert. denied, 429 U.S. 870, 97 S.Ct. 83, 50 L.Ed.2d 150 (1976). See, e. g., Zdanok v. Glidden Co., Durkee Famous Foods Division, 327 F.2d 944, 954-56 (2d Cir.), cert. denied, 377 U.S. 934, 84 S.Ct. 1338, 12 L.Ed.2d 298 (1964). We have not, however, completely abandoned the requirement of mutuality of estoppel. See, e. g., Divine v. Commissioner of Internal Revenue, 500 F.2d 1041, 1045-50 (2d Cir. 1974)
 
 
 [12]
 There may be another precondition to the application of the rule of collateral estoppel. That possible precondition is that the rule of collateral estoppel can be applied only if the issue sought to be precluded in the later suit is relative to that suit, an issue of "ultimate," The Evergreens v. Nunan, 141 F.2d 927, 928 (2d Cir.) (L. Hand, J.), cert. denied, 323 U.S. 720, 65 S.Ct. 49, 89 L.Ed. 579 (1944) ("those facts, upon whose combined occurrence the law raises the duty, or the right, in question"), fact or mixed fact and law rather than merely one of "evidentiary" or "mediate," id. ("fact, from whose existence may be rationally inferred the existence of one of the facts upon whose combined occurrence the law raises the duty, or the right (, in question)"), fact. Id. at 928; accord, Yates v. United States, 354 U.S. 298, 338, 77 S.Ct. 1064, 1 L.Ed.2d 1356 (1957); United States v. Grinnell Corp., 307 F.Supp. 1097, 1097-98 (S.D.N.Y.1969). However, the validity of this principle has been severely questioned in United States v. Kramer, 289 F.2d 909, 916-18 (2d Cir. 1961) (Friendly, J.), and in Restatement (Second) Judgments § 68, Illustrations 17 and 18 and Comment j (Tent. Draft No. 4, 1977). This precondition, though expressed somewhat differently, is also recognized under the New York law of collateral estoppel, which requires that the issue sought to be precluded in the later suit must be "decisive," see Schwartz v. Public Administrator, supra, 24 N.Y.2d at 71, 298 N.Y.S.2d at 960, 246 N.E.2d at 729, of that suit
 As we shall discuss shortly in the text of this opinion, Winters is barred from relitigating two independent issues, either of which can be said to be "decisive" of the federal court action here or to be an "ultimate" issue of fact or of mixed fact and law here. Moreover, the precondition that the issue be an "ultimate" issue really serves no useful purpose in a case, as is true here, in which the earlier state court action was commenced by the present federal civil rights plaintiff and the federal suit here was filed shortly after the state court action had been instituted and, indeed, long before the decision in that earlier suit had been rendered. The precondition was created to offer litigants some protection from the utter unforeseeability of the use, as evidentiary fact, to which findings from the earlier suit might be put in some unforeseeable future litigation. Of course, under the circumstances here, the concerns which impelled the creation of the precondition, see The Evergreens v. Nunan, supra, 141 F.2d at 929, simply do not exist.
 
 
 [13]
 The argument that the two causes of action are the "same" under New York law is not an unattractive one inasmuch as any judgment rendered in favor of Winters in the federal court action would likely have "destroy(ed) or impair(ed) rights on interests established by the first (judgment)." Schuykill Fuel Corp. v. B. & C. Nieberg Realty Corp., 250 N.Y. 304, 307, 165 N.E. 456, 457 (1929). See note 14 infra
 
 
 [14]
 The concepts of collateral estoppel developed under New York law and under the general federal law of res judicata might differ in one respect, a difference which is, however, of no controlling importance here. This possible difference between the approach followed by the New York courts and that utilized by the federal courts is that it may well be that, in all cases in which there is an issue of whether collateral estoppel should be applied, the New York courts are required to examine whether the litigant against whom the rule would be invoked was given a full and fair opportunity to litigate the issue in the prior case, whereas the federal courts discussing the theory of collateral estoppel typically do not mention this requirement, unless the case is one in which the court has decided to reject the traditional requirement of mutuality of estoppel, or, in other words, to permit the rule of collateral estoppel to be invoked by an individual who was not a party to the earlier litigation
 Along with an increasing number of jurisdictions, see, e. g., State of North Carolina v. Chas. Pfizer & Co., supra, 537 F.2d at 73; Annot., 31 A.L.R.3d 1044, 1067 (1970), the New York courts have abandoned the requirement of "mutuality of estoppel," see e. g., Schwartz v. Public Administrator, supra, 24 N.Y.2d at 70, 298 N.Y.S.2d at 959, 246 N.E.2d at 728; B. R. DeWitt, Inc. v. Hall, 19 N.Y.2d 141, 147, 278 N.Y.S.2d 596, 601, 225 N.E.2d 195, 198-99 (1967), and the courts of that state now permit the doctrine of collateral estoppel to be invoked by a person who was not a participant in the earlier lawsuit. Such application is allowed, however, only if the party against whom the doctrine would be invoked in the later suit had a "full and fair opportunity" to litigate the issue in the first suit. Since this requirement that there must have been a full and fair prior opportunity to litigate the issue has traditionally been specifically linked to and discussed primarily in the context of the abandonment of the requirement of mutuality of estoppel, see, e. g., Graves v. Associated Transport, Inc., 344 F.2d 894, 900-01 (4th Cir. 1965); Zdanok v. Glidden Co., Durkee Famous Foods Division, supra, 327 F.2d at 956; B. R. DeWitt, Inc. v. Hall, 19 N.Y.2d at 144-45, 278 N.Y.S.2d at 599, 225 N.E.2d at 197; Annot., 31 A.L.R.3d 1044, 1067 (1970), one might expect that the explicit requirement of a "full and fair opportunity" would be confined to those situations in which the party by whom the doctrine is being invoked in the later suit was not a party to the earlier lawsuit. While this would appear to be true of the federal cases (compare, e. g., Graves v. Associated Transport, Inc., supra, 344 F.2d at 900-01 and Zdanok v. Glidden Co., Durkee Famous Foods Division, supra, 327 F.2d at 956, with, e. g., Taylor v. New York City Transit Authority, 433 F.2d 665, 668-69 (2d Cir. 1970) (no reference by court to requirement of "full and fair opportunity"); Roth v. McAllister Bros., Inc., 316 F.2d 143, 145 (2d Cir. 1963) (same); United States v. Grinnell Corp., 307 F.Supp. 1097, 1097-98 (S.D.N.Y.1969) (same)), the New York courts have apparently imported it as a requirement into all cases in which there is an issue of whether collateral estoppel should be applied. Specifically, in Schwartz v. Public Administrator, supra, 24 N.Y.2d at 71, 298 N.Y.S.2d at 960, 246 N.E.2d at 729 (emphasis supplied), the Court of Appeals declared:
 "New York Law has now reached the point where there are but two necessary requirements for the invocation of the doctrine of collateral estoppel. There must be an identity of issue which has necessarily been decided in the prior action and is decisive of the present action, and, second, there must have been a full and fair opportunity to contest the decision now said to be controlling."
 Accord, Thompson v. Galaxy Enterprises, Inc., 414 F.Supp. 198, 199 (S.D.N.Y.1976) (recognizing that under New York law question of whether collateral estoppel should be applied is controlled by whether there was a "full and fair opportunity" to litigate the issue).
 Any possible distinction between the New York and federal approaches is immaterial here, however, inasmuch as the flexible New York standards, set forth in Schwartz v. Public Administrator, supra at 72, 298 N.Y.S.2d at 961, 246 N.E.2d at 729, for determining whether a "full and fair opportunity" was provided in the earlier litigation are easily satisfied here. This is particularly so, we believe, in view of the fact that, if we decided this case exclusively under New York law, the plenary doctrine of res judicata, where the New York courts have seemingly not stressed the requirement of a "full and fair opportunity" to litigate, would appear to be available to bar completely all matters which were litigated or might have been litigated by Winters in the Article 78 proceeding. See note 13 supra.
 In Schwartz v. Public Administrator, supra, 24 N.Y.2d at 72, 298 N.Y.S.2d at 961, 246 N.E.2d at 729, the New York Court of Appeals explained that "a decision whether or not the (party) had a full and fair opportunity to establish (its position on an issue) in the prior action requires an exploration of the various elements which make up the realities of litigation." Some of the nine factors delineated by the court there are addressed essentially to the underlying consideration of whether the party "had more than adequate incentive to litigate long and hard." Vincent v. Thompson, 79 Misc.2d 1029, 1040, 361 N.Y.S.2d 282, 295 (Sup.Ct. Nassau County 1974), rev'd on other grounds, 50 App.Div.2d 211, 377 N.Y.S. 118 (2d Dep't 1975), and whether the party did in fact fight "long and hard." See Zdanok v. Glidden Co., Durkee Famous Foods Division, supra, 327 F.2d at 956 ("The (earlier) litigation was prosecuted by Glidden with the utmost vigor, up to the Supreme Court of the United States."). Although Winters' pecuniary claim was not large in absolute terms, it was sufficiently important to her to have caused her to attempt to litigate the matter not only in the New York State Supreme Court, where it was originally filed, and then, upon a transfer, in the Appellate Division but in the New York Court of Appeals and in the United States Supreme Court as well. In other words, her actions in prosecuting the prior case evince a strong "use of initiative," on her part. Schwartz v. Public Administrator, supra, 24 N.Y.2d at 72, 298 N.Y.S.2d at 961, 246 N.E.2d at 729; see, e. g., Graves v. Associated Transport, Inc., supra, 344 F.2d at 900-01 (litigant had been provided ample opportunity to litigate despite the fact that his adversary in earlier action had the "initiative"); Zdanok v. Glidden Co., Durkee Famous Foods Division, supra, 327 F.2d at 956 (same). As to the "foreseeability of future litigation," Schwartz v. Public Administrator, supra, 24 N.Y.2d at 72, 298 N.Y.S.2d at 961, 246 N.E.2d at 729, there can be absolutely no doubt that Winters, who instituted the later federal action shortly after filing the state court action and long before the Article 78 proceeding had been decided, clearly must have foreseen the possible preclusive consequences arising from an unfavorable decision in the first action. See Williams v. Ward, supra, 556 F.2d at 1154; Zdanok v. Glidden Co., Durkee Famous Foods Division, supra, 327 F.2d at 956. Furthermore, the other factors listed by the court in Schwartz v. Public Administrator present no impediment to the invocation of collateral estoppel here. For instance, there is no claim now that Winters has any newly discovered evidence which was not previously available to her or which was not discoverable by her through the use of due diligence at the time of the prior case; there has been no change in the applicable law; since she chose it herself, the forum of the prior litigation certainly was not inconvenient for Winters and it cannot, moreover, be found to have been deficient in any respect; Winters does not, and certainly cannot, contend that the Appellate Division's decision was influenced by extraneous factors such as sympathy or prejudice. Furthermore, she would be in no position to argue that her counsel in the prior case was grossly incompetent inasmuch as she has retained that same counsel to represent her in the instant federal court action. Finally, prior to the Appellate Division's decision in the Article 78 proceeding Winters was fully cognizant of what issues had been raised in that case and thus she had full opportunity to contest them there.
 
 
 [15]
 There is one situation in which a dismissal by the Court of Appeals might possibly constitute an adjudication on the merits. This would occur when there is no possibility that the Appellate Division's decision was based on other than constitutional grounds and the constitutional issues, and no others, are clearly presented on appeal to the Court of Appeals. In such circumstances, it may well be that a dismissal "for want of a substantial constitutional question," Turco v. Monroe County Bar Association, 554 F.2d 515, 519 (2d Cir.), cert. denied, 434 U.S. 834, 98 S.Ct. 122, 54 L.Ed.2d 95 (1977), may mean, at least in the context of res judicata analysis, "that the constitutional issues specifically raised were insubstantial on the merits." Id. at 521. It is somewhat doubtful, however, whether the New York courts would share this view. See O'Brien v. Commissioner of Education, 4 N.Y.2d 140, 145, 173 N.Y.S.2d 265, 267, 149 N.E.2d 705, 706-07 (1958), appeal dismissed and cert. denied, 361 U.S. 117, 80 S.Ct. 207, 4 L.Ed.2d 154 (1959)
 
 
 [16]
 We note that the Appellate Division's affirmance of the administrative action on this ground may well have been erroneous inasmuch as the ground was not a basis upon which the administrative agency itself had relied in reaching its decision. Although it is axiomatic that an appellate court can affirm a lower court's decision on a ground other than that upon which the lower court relied, a similar rule does not apply to judicial review of administrative action. On such review the administrative action will be upheld only if the basis expressly set forth by the administrative agency in its decision is a valid one. E. g., Barry v. O'Connell, 303 N.Y. 46, 50-51, 100 N.E.2d 127, 129 (1951); Stern, Simms & Stern v. Joy, 48 A.D.2d 788, 788, 369 N.Y.S.2d 152, 154 (1st Dep't 1975) (per curiam); accord, SEC v. Chenery Corp., 332 U.S. 194, 196, 67 S.Ct. 1575, 1760, 91 L.Ed. 1995 (1947). For our present purposes, however, it is immaterial that the Appellate Division may have erred in affirming the administrative action on a ground other than one upon which the state Department of Social Services had expressly predicated its decision, for application of "(t)he doctrine of res judicata does not depend on whether the prior judgment was free from error." Mitchell v. National Broadcasting Co., supra, 553 F.2d at 272; accord, e. g., Milliken v. Meyer, 311 U.S. 457, 462, 61 S.Ct. 339, 85 L.Ed. 278 (1940); 1B Moore's Federal Practice P 0.405(4.-1), at 635, 637 (1965 & 1976 Cum.Supp.); New York State Labor Relations Board v. Holland Laundry, Inc., 294 N.Y. 480, 486, 63 N.E.2d 68, 71 (1945); Gelb v. Mazzeo, 5 A.D.2d 10, 11-12, 169 N.Y.S.2d 58, 59-60 (3d Dep't 1957); Rooney v. Tufano Contracting Corp., 43 Misc.2d 358, 360, 251 N.Y.S.2d 392, 394 (Sup.Ct. Special Term Suffolk County 1964); Restatement of Judgments § 48, Comment a (1942)
 
 
 [17]
 Though made with specific reference to the treatments administered by Christian Science practitioners, in her complaint Winters does appear to acknowledge that her quest for benefits would be unsuccessful if there were other independently sufficient reasons, unrelated to any categorical exclusion of benefits for Christian Science treatments, why her claim would have been denied by the state welfare officials. For instance, in paragraph 3 of her Prayer for Relief Winters seeks only the "Medicaid benefits in the amount to which she is entitled and that would otherwise be available to her except for the fact that she exercises her constitutional right to freedom of religion by seeking the services of Christian Science practitioners when she is ill." And, in paragraph 5 of her Prayer for Relief, she requests the award of "Medicaid benefits in the amount to which (she would be) otherwise entitled" but only if the defendants are refusing to pay these benefits "solely on the grounds that (Winters has) sought the treatments of Christian Science practitioners when (she has) become ill."
 
 
 [18]
 While we have concluded that adequate evidence supported the Board's action, that does not necessarily defeat a claim of retaliatory nonrenewal; a discharge motivated only in part by demonstrable retaliation for exercise of speech and associational rights is equally offensive to the Constitution
 473 F.2d at 995.
 
 
 [19]
 Though of such recent origin, Mt. Healthy has already supplied the mode of analysis utilized by a number of courts which have had occasion to decide issues similar to the one raised in Mt. Healthy. See, e. g., East Texas Motor Freight System Inc. v. Rodriguez, 431 U.S. 395, 97 S.Ct. 1891, 1897 & n. 9, 52 L.Ed.2d 453 (1977); International Brotherhood of Teamsters v. United States, 431 U.S. 324, 97 S.Ct. 1843, 1871-72 n. 53, 52 L.Ed.2d 396 (1977); Ayers v. Western Line Consolidated School District, 555 F.2d 1309, 1314-15 (5th Cir. 1977); Johnson v. Cain, 430 F.Supp. 518, 521 (N.D.Ala.1977); Penick v. Columbus Board of Education, 429 F.Supp. 229, 260 (S.D.Ohio 1977); Lasco v. Koch, 428 F.Supp. 468, 475-76 (S.D.Ill.1977)
 
 
 [20]
 "Proof that the decision by the Village was motivated in part by a racially discriminatory purpose would not necessarily have required invalidation of the challenged decision. Such proof would, however, have shifted to the Village the burden of establishing that the same decision would have resulted even had the impermissible purpose not been considered. If this were established, the complaining party in a case of this kind no longer fairly could attribute the injury complained of to improper consideration of a discriminatory purpose. In such circumstances, there would be no justification for judicial interference with the challenged decision."
 Village of Arlington Heights v. Metropolitan Development Corp., 429 U.S. 252, 270-71 n. 21, 97 S.Ct. 555, 566, 50 L.Ed.2d 450 (1977).
 
 
 [21]
 It is clear under the circumstances here that the Appellate Division's holding that there was insufficient proof of entitlement to benefits must be taken to mean not only that the defendants could have, but also that they would have denied Winters' request for benefits even in the absence of a blanket rejection of Medicaid claims for payment of the cost of services rendered by Christian Science nurses. There are often situations, typically occurring in the context of the discharge of a public employee or the refusal to rehire or to extend tenure to a nontenured teacher, see, e. g., Mt. Healthy City School District Board of Education v. Doyle, 429 U.S. 274, 285, 97 S.Ct. 568, 50 L.Ed.2d 471 (1977); Ayers v. Western Line Consolidated School District, supra, 555 F.2d at 1314; Johnson v. Cain, supra, 430 F.Supp. at 521, in which the defendant governmental officials, because of the extraordinary discretion they can exercise in such matters, may have difficulty showing that they would have taken the same action against the federal civil rights plaintiff even if they had not acted in part for constitutionally impermissible reasons, although these same defendants would have no difficulty showing that they had justification for taking such action, i. e., that they could have taken such action. See, e. g., Ayers v. Western Line Consolidated School District, supra, 555 F.2d at 315. There is, however, a marked contrast between such cases and the case before us now. Here, where we must accept as an established fact that Winters submitted insufficient proof to establish her entitlement to benefits, it is clear that under the New York Medicaid statute and regulations, the defendants possessed no discretion to grant Winters benefits in the absence of adequate proof of her entitlement to those benefits. Specifically, N.Y. Soc. Serv. Law § 367-a(1) (emphasis supplied) provides that "(c)laims for payment shall be made in such form and manner as the department shall determine." The specific requirements are contained in the state Medicaid regulations, 18 N.Y.C.R.R. § 540.7 and, in particular, §§ 540.7(a)(2), (8). See also §§ 540.10(a)(1), 540.11. Section 540.7(a)(8) requires that all bills for medical care and services must contain a certification by the provider of the service that he shall keep "such records as are necessary to disclose fully the extent of care (and) services provided." Evincing a similar concern with particularity is § 540.7(a)(2) which requires that all bills for medical care and services must contain "itemization of the volume and specific types of care (and) services . . . provided (including for a physician, his final diagnosis . . .)." Construing these requirements, the New York courts have stated that if a bill "lack(s) sufficient information to satisfy the mandates of the statute and rule(s, then) the Commissioner may not authorize payment." Aroune v. Sipprell, 36 A.D.2d 888, 888, 320 N.Y.S.2d 333, 335 (4th Dep't 1971) (citing, inter alia, N.Y. Soc. Serv. Law § 367-a(1) and 18 N.Y.C.R.R. § 540.7(a)(2)), aff'd without opinion, 33 N.Y.2d 844, 352 N.Y.S.2d 193, 307 N.E.2d 253 (1973). Thus, as in those cases in which a potential employee would not have been hired because his stated qualifications (for employment) were insufficient, International Brotherhood of Teamsters v. United States, supra, 97 S.Ct. at 1872 n. 53; accord, East Texas Motor Freight System Inc. v. Rodriguez, supra, 97 S.Ct. at 1897, n. 9, it is clear that, irrespective of the state's position on the compensability of services rendered by Christian Science nurses, Winters would not have been awarded benefits on the basis of the inadequate proof she submitted
 
 
 [22]
 It would be unwise to require a losing litigant in bankruptcy to take an appeal from alleged errors in one alternative ground simply to ward off the conclusive effect of collateral estoppel on a later discharge proceeding, when on appeal the court could affirm on one of the other alternative grounds. This seems particularly so in bankruptcy litigation, when debtors particularly are often handicapped in financing litigation in the predischarge stages of the proceeding
 Halpern v. Schwartz, supra, 426 F.2d at 106.
 
 
 [23]
 We therefore hold that when a prior judgment adjudicating one a bankrupt rests on two or more independent alternative grounds it is not conclusive as to issues in trial of objections to discharge which issues were necessarily found in order to establish only one of those grounds
 Halpern v. Schwartz, supra, 426 F.2d at 106.
 
 
 [24]
 We do not agree, however, with the reasoning upon which the three-judge court concluded that the principles of res judicata bar relitigation of the nursing claim. In developing the applicable standard, the court determined that "(u)nder New York law a final judgment on the merits in an Article 78 proceeding is conclusive as to the rights of all parties, or their privies, to the litigation with respect to all issues actually raised and litigated even if not decided by the court." (Emphasis supplied.) Utilizing the rule it had gleaned from the New York cases it had cited, the court next determined that Winters had actually raised and litigated the constitutional issue before the Appellate Division and, on that basis alone and without determining whether the Appellate Division had actually decided the constitutional issue, the district court concluded that the principles of collateral estoppel and res judicata were properly applied to bar Winters' constitutional claim
 We first note that the district court's citation of three New York cases as support for its reading of New York law is puzzling, as those cases, as we read them, do not support the propositions for which they were cited by the district court. As we have explained earlier in this opinion, the New York law of res judicata and collateral estoppel is well-settled. If, on one hand, the district court meant to apply the New York concept of res judicata, its interpretation of New York law was unduly restrictive, for under that doctrine issues can be precluded even if they were neither raised nor litigated. On the other hand, it is more likely that the district court intended to utilize the New York concept of collateral estoppel, for the court characterized the issue before it as being whether "plaintiff is now collaterally estopped by the doctrine of res judicata from asserting her constitutional" claim. Assuming the district court was relying upon what it believed to be the New York law of collateral estoppel, its interpretation of that law was incorrect, because, for relitigation of issues to be barred in New York under the doctrine of collateral estoppel, the issues sought to be litigated in the later action must not only have been raised and litigated but also must have been decided in the previous case. E. g., Schwartz v. Public Administrator, supra, 24 N.Y.2d at 71, 298 N.Y.S.2d at 960, 246 N.E.2d at 729. Of course, as we explained earlier in this opinion, a claim submitted to a court for resolution can be resolved even though the court in its decision does not expressly mention or rule upon that claim, provided that the claim is necessarily decided by the final judgment entered by the court. Perhaps, this is the only thought which the district court below wished to express.