382 F.2d 378
 Nettie A. GLASS, Administratrix of the Estate of Billy Morrison Glass, Deceased, Appellant,
v.
The UNITED STATES RUBBER COMPANY, a corporation, Appellee.
David A. GRAMMER, Administrator of the Estate of Burl Ronald Suther-land, Deceased, Appellant,
v.
The UNITED STATES RUBBER COMPANY, a corporation, Appellee.
 No. 9263.
 No. 9264.
 United States Court of Appeals Tenth Circuit.
 September 6, 1967.
 
 George T. Harris, Albuquerque, N. M. (Modrall, Seymour, Sperling, Roehl & Harris, Albuquerque, N. M., on the brief), for appellant Nettie A. Glass, administratrix, etc.
 Willard F. Kitts, Albuquerque, N. M., for appellant David A. Grammer, administrator, etc. A. H. McLeod, Albuquerque, N. M. (Keleher & McLeod and Russell Moore, Albuquerque, N. M., on the brief), for appellee.
 Before PHILLIPS, LEWIS and HILL, Circuit Judges.
 ORIE L. PHILLIPS, Circuit Judge.
 
 
 1
 These are wrongful death actions brought by Nettie A. Glass, as administratrix of the estate of Billy Morrison Glass, deceased, and David A. Grammer, as administrator of the estate of Burl Ronald Sutherland, deceased,[1] against the United States Rubber Company.[2]
 
 
 2
 Before the commencement of these actions, such administratrix, in behalf of her decedent, and such administrator, in behalf of his decedent, had brought a wrongful death action against Stratoflex, Inc., and others in the District Court of Bernalillo County, New Mexico. Those actions were consolidated for trial and resulted in a judgment on jury verdicts in favor of Stratoflex.
 
 
 3
 The instant actions were consolidated for hearing, and the trial court held that the state court judgment was a bar to each of them, under the doctrine of res judicata, and entered a judgment dismissing such actions. Each of the personal representatives has appealed.
 
 
 4
 In Henderson v. United States Radiator Corporation, 10 Cir., 78 F.2d 674, 675, the court said:
 
 
 5
 "The doctrine of res judicata embodies two main rules which may be stated as follows:
 
 
 6
 "(1) The final judgment or decree of a court of competent jurisdiction upon the merits concludes the parties and their privies to the litigation, and constitutes a bar to a new action or suit upon the same cause of action either before the same or any other tribunal.
 
 
 7
 "(2) Any right, fact or matter in issue and direcly adjudicated, or necessarily involved in the determination of an action before a competent court in which a judgment or decree has been rendered upon the merits, is conclusively settled by the judgment therein and cannot again be litigated between the same parties and their privies, whether the claim, demand, purpose or subject-matter of the two suits is the same or not.
 
 
 8
 "The principle of the first rule is referred to as `bar by former judgment,' and the second as `conclusiveness of judgment.'"[3]
 
 
 9
 It is a well established general rule that to constitute an estoppel under the doctrine of res judicata, the action in which the judgment was rendered and in which it is asserted as a bar must be between the same parties or their privies.[4] In the instant cases there was no showing that Stratoflex and the Rubber Company were privies. However, the trial court applied the estoppel by judgment rule, holding that such cases fell within an exception to the general rule, above stated.
 
 
 10
 The facts out of which the instant actions arose are these:
 
 
 11
 On and prior to September 11, 1962, Marjorie Barrett, dba Monte's Star Truck Stop, owned and operated a cafe, facilities for storing propane gas and selling it at retail, and other facilities at her truck stop, located on U. S. Highway 66 in Bernalillo County, New Mexico. The propane gas facilities consisted of a storage tank of 12,000 gallon capacity, two pumps with connecting hoses for delivery of gas to retail purchasers, an electric motor, a two-inch hose with means to connect it with the storage tank and with a truck tank for delivery of propane gas from the truck tank to the storage tank, and a small hose to be connected with the truck tank and the storage tank to equalize the vapor pressure between them. The two-inch hose had an inner tube made of neoprene, which is a synthetic rubber, reinforced with one braid of fabric cord and one braid of carbon steel wire mesh, and an outer covering of rubberized material.
 
 
 12
 The propane storage and dispensing facilities were furnished and installed by Arrow Gas Company.[5] The two-inch hose was manufactured by the Rubber Company for Stratoflex. In Stratoflex's catalog it was identified as No. 225 and will hereafter sometimes be referred to as the No. 225 hose here involved.
 
 
 13
 On September 11, 1962, Glass and Sutherland were employed by Arrow as drivers and operators of one of Arrow's tank trucks, used to transport and deliver propane gas to retailers thereof. On that day they were engaged as such employees in the delivery of propane gas from the truck tank into Barrett's storage tank at the truck stop. On arriving at the truck stop they connected the No. 225 hose here involved with the truck tank and the storage tank and commenced the delivery of propane gas into the storage tank. They then went into the cafe, about 100 feet distant from the point of delivery. Shortly after they entered the cafe, they heard a loud whoosh and immediately ran to the truck. Soon after they reached it, the propane gas, which was escaping from a rupture in the No. 225 hose here involved and producing the whoosh sound, caught on fire and each of them suffered severe burns from which he died.
 
 
 14
 Stratoflex furnished the Rubber Company with description standards for the No. 225 hose here involved, which set forth the performance requirements for such hose, as to bursting pressure, which was 1,400 pounds per square inch, working pressure, which was 350 pounds per square inch, diameter, bend radius, tolerances, and the like, but it left the materials to be used, the design, and the actual method of construction to the manufacturer. In other words, Stratoflex made certain end result requirement standards, but left to the Rubber Company the determination of the design, the materials to be used, the means and methods to be followed to attain such requirement standards, and the carrying out of the actual construction.
 
 
 15
 Stratoflex made pressure tests on hoses like the No. 225 hose here involved, selected from shipments received by it from the manufacturers thereof. However, it did not test all of the hoses in a shipment. It left to the manufacturer the testing of each individual hose. Manufacturers of hoses like the No. 225 hose here involved test each such hose they manufacture.
 
 
 16
 A catalog of Stratoflex,[6] which described the No. 225 hoses, was introduced in the state court actions. It sets forth the construction of the No. 225 hoses, as follows:
 
 
 17
 "Hose construction; Seamless synthetic rubber inner tube, reinforced with one braid of fabric cord, one braid of high tensile wire and covered with a synthetic rubber cover;"
 
 
 18
 and the identification markings as follows:
 
 
 19
 "Identification; a continuous green marking strip parallel to the hose axis and consisting of manufacturer's code initial, `Stratoflex 225-size' and date of manufacture repeated every 18 inches or less." (Italics ours.)
 
 
 20
 The evidence established that the No. 225 hose involved in the instant actions was stamped by the Rubber Company with the initials "U.S.R." — the initials of the United States Rubber Company — and the word "Stratoflex." It is a reasonable assumption that there was also stamped on such hose its size (two inches)[7] and the date of its manufacture, and that all of the above markings were repeated every 18 inches or less, throughout the length of such hose.
 
 
 21
 The causes of action against Stratoflex, set up in the original complaints in the state court cases, were all predicated on the premise that Stratoflex was the manufacturer of the hose.
 
 
 22
 By the second cause of action in his complaint in the state court, Grammer, as administrator, sought recovery against Stratoflex. At the pretrial conference he was permitted to amend paragraph 4 of Count One of such second cause of action to read as follows:
 
 
 23
 "That the Defendant STRATOFLEX, INC. negligently manufactured and designed said hose, or in the alternative, stands in the position of the designer and manufacturer of said hose; that said Defendant negligently failed to warn of the unreasonable dangers associated with said hose, and was further negligent in the furnishing of a defective product not suitable for the purpose for which it was sold."
 
 
 24
 While the record in the state court does not show a like amendment by Glass, as administratrix, of the third and fourth causes of action of her complaint in her state court action in which she sought recovery against Stratoflex, setting up such alternative grounds for recovery, it is quite clear that the consolidated actions in the state court with respect to the claims asserted against Stratoflex were tried on the alternative grounds or theories that Stratoflex either manufactured the No. 225 hose here involved or held itself out as the manufacturer of such hose. That is clearly shown by the court's instructions, as we shall presently show.[8]
 
 
 25
 In the consolidated cases in the state court, the court instructed the jury in part as follows:
 
 
 26
 "24. You are instructed in this connection, that if you find that Stratoflex 225 hose was so labeled, advertised and marketed by the defendant as to lead those who use it to believe that it was the product of Stratoflex, Inc., then the defendant is subject to the same duty as though it were the actual manufacturer."
 
 
 27
 The state court also instructed the jury with respect to the duties of the manufacturer of a hose like the No. 225 hose involved in this action in substance as follows: That he "must have sufficient technical knowledge" of a product he manufactures "to form a reasonably accurate judgment as to whether the product is made under such procedures as are necessary to insure a reasonably safe finished product"; "that a manufacturer * * * is under a duty to exercise reasonable care and skill in designing," in choosing the materials to be used, and in "manufacturing * * * his product" and in providing and carrying out adequate inspection procedures during the process of manufacture and on its completion, so that such product will not be dangerous when used for its intended purposes; and that "a manufacturer is * * * required to give adequate directions for the use of" his "product and adequate warnings of potential dangers" that accompany such use.
 
 
 28
 The state court further instructed the jury that Stratoflex, as the "original seller" of the No. 225 hose involved in these actions to Arrow, owed a duty to warn both Arrow and all persons it could reasonably anticipate would use such hose of any dangerous condition or characteristic of such hose, known to it when it delivered such hose to Arrow, or of which it thereafter acquired knowledge. It will be observed that such instruction related to the legal duties of Stratoflex as a seller and not as a manufacturer — legal duties which devolved upon it, even though it did not hold itself out as the manufacturer.
 
 
 29
 The state court jury returned general verdicts in favor of Stratoflex.
 
 
 30
 In each of the complaints in the instant cases, it was alleged that the No. 225 hose here involved was "designed and manufactured" by the Rubber Company; that such "hose was dangerous and defective, was inherently dangerous and imminently dangerous, and was not fit or suitable for the purpose for which it was designed, manufactured and placed in commerce"; that the Rubber Company, as the "designer and manufacturer" of such hose "had a duty to exercise reasonable care for the protection of all those who could reasonably be anticipated" would use such hose; and that the Rubber Company breached its duty and "was negligent in the following respects": The Rubber Company "was negligent in the manufacture" of such hose; the Rubber Company "was negligent in the design" of such hose; the Rubber Company "negligently failed to make proper inspection" of such "hose and of hoses of" the "same design, type and construction"; the Rubber Company "negligently failed to make proper tests of" such "hose and of hoses of the" same "design, type and construction"; the Rubber Company "negligently furnished and placed in commerce a defective product not suitable for the purpose for which it was designed and manufactured"; the Rubber Company "knowing the intended use of" such "hose and of" such "type and design of hose, negligently failed to give adequate, proper or reasonable notice or warning concerning the care, maintenance and limitations of use for" such "hose or type of hose"; and that the Rubber Company "knew, or in the exercise of reasonable care, should have known, at a time subsequent to the manufacture of the hose, that other pieces of hose of" the "same design, type and construction, had failed in service and were found to be structurally defective in service, but despite said actual or constructive knowledge, negligently failed to give an appropriate warning or notice of" such "defects or a warning which would be reasonably calculated to inform, warn or protect those who would use the hose."
 
 
 31
 Thus, it will be seen that the instant actions are predicated on duties and breaches of duties particularly applicable to the manufacturer of the No. 225 hose here involved, and if the jury in the state court actions found that Stratoflex did not hold itself out as the manufacturer of the No. 225 hose involved here and in the state court actions, then clearly none of the duties, which each personal representative by the averments above set out of his complaint herein alleged were owed to the decedent named therein by the Rubber Company and were breached by it, were duties that devolved on Stratoflex.
 
 
 32
 The personal representatives assert two grounds for reversal:
 
 
 33
 1. That the jury verdict in the state court actions could have been predicated on distinct and controlling issues not involved in the instant actions against the Rubber Company; that the record in the state court actions does not show the verdicts and judgment in such actions were based on the determination of an issue or issues which are controlling in the instant actions; that the Rubber Company did not show by extrinsic evidence the controlling issue or issues in the instant cases were actually determined in the state court actions; and
 
 
 34
 2. That the Rubber Company is not a privy of Stratoflex and the requisite identity of parties is therefore absent.
 
 
 35
 Counsel for the Rubber Company assert that the uncontradicted evidence established that the No. 225 hose here involved was so labeled, advertised, and marketed by Stratoflex as to lead those who used it to believe it was manufactured by Stratoflex, and that the jury in the state court actions could not have found otherwise under the evidence, and therefore the jury in the state court actions, under the instructions of the court, must have proceeded on the theory that Stratoflex had the same duty to the decedents as the actual manufacturer, the Rubber Company. From those premises they contend that the jury must have decided that the No. 225 hose here involved was not negligently manufactured, was not improperly designed, was properly constructed, was suitable for its intended use, and either there was no manufacturer's duty to warn of a dangerous condition, or if there was such a duty, adequate warning was given by Stratoflex, standing in the shoes of the manufacturer of the hose, and hence the jury in the state court actions decided against the personal representatives and their decedents all the issues arising out of the claims here asserted against the Rubber Company.
 
 
 36
 Was the issue of whether the No. 225 hose here involved was so labeled, advertised, and marketed by Stratoflex as to reasonably lead those who used it to believe it was in fact manufactured by Stratoflex one of fact for the determination of the jury in the state court cases? The state court judge obviously believed it was an issue for the jury's determination, because he squarely submitted it in his instructions as an issue of fact to be determined by the jury.
 
 
 37
 The paragraph in Stratoflex's catalog headed "Identification" states that the markings on the No. 225 hose, repeated every 18 inches or less of its length, include the "manufacturer's code initial."
 
 
 38
 It is a well-known fact that virtually all rubber products are manufactured by the five major rubber companies and by a small number of lesser rubber companies.
 
 
 39
 The markings on the No. 225 hoses manufactured for Stratoflex by rubber companies and on the No. 225 hose here involved indicated they were made by the particular rubber company whose initials appeared thereon and not by Stratoflex. Had they been manufactured by Stratoflex, there would have been no occasion to set forth the manufacturer's code initials thereon. Hence, we are of the opinion that the initials "U.S.R." on the No. 225 hose here involved indicated to a buyer or user it was made by the United States Rubber Company and not by Stratoflex.
 
 
 40
 If regard be given to the fact that the initials "U.S.R." so indicated, then the fact that the trade name "Stratoflex" was stamped on the No. 225 hose here involved gave little, if any, indication that such hose was manufactured by Stratoflex. When a dealer who sells goods to others for resale has a trade name and contracts with the manufacturer to make such articles for him and stipulates certain performance requirement standards, it is not uncommon for the manufacturer to stamp the dealer's trade name on the article when it is manufactured, even though the dealer leaves to the manufacturer the materials to be used, the design, the means and methods used to meet those requirements, and the actual manufacture of the article. Such is a common practice today in the business world.
 
 
 41
 It was established by uncontradicted evidence that the Rubber Company, not Stratoflex, manufactured the No. 225 hose involved in these actions. Hence, Stratoflex owed no duties to Glass and Sutherland, as the actual manufacturer, and whether it owed them the duties of a manufacturer under the state court's instructions depended on whether Stratoflex held itself out as the manufacturer of such hose.
 
 
 42
 After a careful consideration of all of the evidence in the state court record and the original exhibits introduced in the state court, we conclude that the question of whether, by the markings on the No. 225 hose involved in these actions and by the descriptions and identification data set forth in its catalog with respect to No. 225 hoses, those who used such hose were led to believe that Stratoflex manufactured such hose, or in any other manner held itself out to them as a manufacturer of such hose, presented issues of fact for the jury's determination; that the jury, under the evidence, might have found Stratoflex did not hold itself out as the manufacturer of the hose, and that such a finding would have been fully consistent with its general verdicts. If the jury did so find, it had no occasion to determine whether there was a breach of any of the duties which the Rubber Company, as the actual manufacturer of such hose, owed to the decedents, or of any of the duties which Stratoflex, had it stood in the shoes of the actual manufacturer, would have owed to such decedents.
 
 
 43
 The case of Happy Elevator No. 2 v. Osage Const. Co., 10 Cir., 209 F.2d 459, 462, involved the application of the second rule of the doctrine of res judicata — the conclusiveness of judgment rule. In the opinion, this court said:
 
 
 44
 "* * * Where it appears that there may have been several distinct issues before the court in the first action, one or more of which may have controlled the judgment and there is no finding or indication in the record as to which of them the judgment is based upon, it is not res judicata as to such issues arising in a second action. In such cases it is incumbent upon the party asserting the defense to prove that the issues were actually litigated and determined in the former action."
 
 
 45
 And in De Sollar v. Hanscome, 158 U.S. 216, 221, 15 S.Ct. 816, 818, 39 L.Ed. 956, the Supreme Court said:
 
 
 46
 "`It is undoubtedly settled law that a judgment of a court of competent jurisdiction, upon a question directly involved in one suit, is conclusive as to that question in another suit between the same parties. But to this operation of the judgment it must appear, either upon the face of the record, or be shown by extrinsic evidence, that the precise question was raised and determined in the former suit. If there be any uncertainty on this head in the record, as, for example, if it appear that several distinct matters may have been litigated, upon one or more of which the judgment may have passed, without indicating which of them was thus litigated, and upon which the judgment was rendered, the whole subject matter of the action will be at large, and open to a new contention, unless this uncertainty be removed by extrinsic evidence showing the precise point involved and determined.' Russell v. Place, 94 U.S. 606, 608 [24 L.Ed. 214]."
 
 
 47
 We are of the opinion that on the record before us it cannot be said that the jury in the consolidated state court actions found that the Rubber Company did not breach any of the duties it owed to the decedents, as the manufacturer of the No. 225 hose here involved, or that Stratoflex, standing in the place of the manufacturer, did not breach any of the duties owing to the decedents by the manufacture of such hose.
 
 
 48
 Therefore, we conclude that the Rubber Company has not established that the facts upon which its liability in the instant cases is predicated were directly adjudicated in the state court actions. Hence, the judgment in the state court actions is not res judicata in the instant cases.
 
 
 49
 Having reached the above conclusion, we find it unnecessary to pass on the question of whether the instant cases fall within an exception to the general rule that the action in which the judgment was rendered and the action in which it was asserted as an estoppel must be between the same parties or their privies.
 
 
 50
 The judgment is reversed and the cause remanded for further proceedings in accordance with the views herein expressed.
 
 
 
 Notes:
 
 
 [1]
 The administratrix and administrator will sometimes hereinafter be referred to collectively as the personal representatives of the decedents
 
 
 [2]
 Hereinafter called the Rubber Company
 
 
 [3]
 See also, Viles v. Prudential Ins. Co. of America, 10 Cir., 124 F.2d 78, 81, cert. den. 315 U.S. 816, 62 S.Ct. 906, 86 L.Ed. 1214
 
 
 [4]
 Viles v. Prudential Ins. Co. of America, 10 Cir., 124 F.2d 78, 82, cert. den. 315 U. S. 816, 62 S.Ct. 906, 86 L.Ed. 1214; Henderson v. United States Radiator Corporation, 10 Cir., 78 F.2d 674, 675
 
 
 [5]
 Hereinafter called Arrow
 
 
 [6]
 We have examined the state court original exhibits and such catalog is the only exhibit that is germane to the question of whether Stratoflex held itself out as the manufacturer of the No. 225 hoses, including the No. 225 hose involved in these cases
 
 
 [7]
 No. 225 hoses were made with different diameters
 
 
 [8]
 The trial judge in his opinion in the instant cases, in referring to the state court cases, said:
 "In those cases it was first alleged that Stratoflex had manufactured a hose which had bursted and caused the death of the plaintiffs' decedents. The instructions of the Court show, however, that the case proceeded on the theory that if Stratoflex did not manufacture the hose that it stood in the same position as the manufacturer. This is brought out by instructions numbers 24, 27, 29, 30, and others. * * *."