ANGSTROHM PRECISION, INC., and Angstrohm Precision of California, Inc., Plaintiffs,

v.

VISHAY INTERTECHNOLOGY, INC., Defendant.

No. CV–80–0576.

United States District Court, E.D. New York.

Sept. 22, 1982.

Nemerroff, Jelline, Danzig, Graff, Mandel & Block, Howard Graff and Elaine Menlow, New York City, for plaintiffs.

Stroock & Stroock & Lavan, Laurence Greenwald, Jay P. Mayesh and Jed Ringel, New York City, for defendant.

## MEMORANDUM OF DECISION AND ORDER

COSTANTINO, District Judge.

The plaintiffs, Angstrohm Precision, Inc., and Angstrohm Precision of California, Inc., have moved for partial summary judgment before this court. The plaintiffs request the invocation of the doctrine of collateral estoppel to preclude the relitigation of issues claimed to have been litigated, tried before a jury, and determined in the Feder-al District Court for the Eastern District of Virginia before the Honorable Albert V. Bryan, Jr. in the case entitled: *Societe Francaise De L'Electro-Resistance and Resistor Research Corporation v. Vishay Intertechnology, Inc.*, Civ. Action No. 79338–A (E.D.Va.1979) ("Sfernice"). For the reasons set forth below, plaintiffs' motion is hereby denied in all respects.

## FACTS

The plaintiff Angstrohm Precision, Inc. is a Maryland corporation. The plaintiff Angstrohm Precision of California, Inc. is a California corporation and a wholly-owned subsidiary of Angstrohm Precision, Inc. (Hereinafter, the plaintiffs are jointly referred to as "Angstrohm.") Angstrohm is engaged in manufacturing and selling high reliability electronic components including circuits, rheostats, and a variety of resistors, particularly hermetically sealed glass incapsulated metal film resistors. The defendant Vishay Intertechnology, Inc. ("Vishay") is a Delaware corporation engaged in manufacturing a variety of resistive products including precision resistors incorporating metal film technology, resistor networks, photoelastic instruments, products used in the field of stress analysis commonly referred to as strain gauges and other stress analysis tools.

The gravamen of the instant complaint is that the defendant has unlawfully monopolized the market for metal foil resistors and unlawfully attempted to monopolize the markets for both metal foil resistors and "precision resistors." The complaint delineates the market for metal foil resistors as embodying only metal foil resistors such as those allegedly manufactured by the defendant since 1962. The broader "precision resistor" market includes, in addition to the metal foil resistors, metal-film resistors as well as wire-wound resistors.

In the context of plaintiffs' monopolization claims, the plaintiffs assert that the defendant should be collaterally estopped from litigating issues relating to the following methods allegedly employed by Vishay in the achievement and maintenance of its

market position: (1) procuring patents fraudulently and filing false oaths with the Patent Office with respect to those patents; (2) instituting illegal proceedings in the Patent Office and filing false oaths with respect thereto; (3) preventing others from manufacturing, selling or distributing metal foil resistors by the assertion of rights under its fraudulently procured patents; (4) engaging in acts of industrial espionage; (5) asserting erroneous and fraudulent claims with respect to certain purported confidential know-how; and (6) entering into several licensing agreements whereby world markets for the metal foil resistor were divided and whereby all other manufacturers and distributors were excluded from the United States market. The proposed estoppel is based upon a judgment vacated subject to a stipulation by the parties in the *Sfernice* action.

### The SFERNICE Litigation

The *Sfernice* litigation was commenced on April 20, 1979. The plaintiff in that action—Societe Francaise de l'Electro-Resistance ("Sfer")—was a French corporation engaged in the sale of electronic resistors. As alleged in the *Sfernice* complaint, the *Sfernice* action grew out of a collaborative and competitive relationship between Sfer and Vishay originating in licensing and sales agreements. Under these agreements, Sfer, the largest resistor manufacturer in France, contracted to purchase resistor chips from Vishay. Sfer's claims in *Sfernice* fell within three categories: Count I alleging monopolization and attempted monopolization; Count II alleging violation of the Lanham Act; and Count III entitled "unfair competition." Vishay denied these allegations and counterclaimed for, *inter alia,* theft of trade secrets as well as breach of a licensing agreement.

The *Sfernice* trial itself focused on the allegations of monopolization and attempted monopolization. After trial by jury a verdict was returned in favor of Sfernice in the sum of $1,500,000, which was automatically trebled under 15 U.S.C. Section 15.

In December 1979, Judge Bryan denied Vishay's motions for judgement notwith-standing the verdict, for a new trial and for a remittitur. Also, Judge Bryan denied Sfer's motion pursuant to F.R.Civ.P. 54(b) for an express direction for the entry of judgment on the verdict rendered. Vishay's counterclaims had previously been severed and set for a separate jury trial to begin January 28, 1980. However, the counterclaims were never tried because by order dated May 13, 1980 Judge Bryan dismissed the complaint and counterclaims with prejudice, and vacated the verdict and judgment on Sfer's claims pursuant to the parties' stipulation of settlement entered subsequent thereto.

The settlement agreement incorporated in the joint stipulation granted Vishay patent licenses to Sfer, and provided, *inter alia,* for Sfer to pay Vishay royalties on Sfer foil resistor products. The agreement also provided for the withdrawal or discontinuation of numerous suits between Sfer and Vishay in the state and federal courts, before the International Trade Commission and in France.

The instant action was commenced on March 11, 1980. Thereafter, plaintiffs moved for partial summary judgment on the ground of collateral estoppel based upon the vacated judgment in *Sfernice.*

### CONCLUSIONS OF LAW

The doctrine of collateral estoppel serves to avoid the relitigation of issues actually and necessarily determined in a prior suit. *See Winters v. Lavine,* 574 F.2d 46 (2d Cir.1978); *Blonder-Tongue Laboratories, Inc. v. University of Illinois Foundation,* 402 U.S. 313, 91 S.Ct. 1434, 28 L.Ed.2d 788 (1971). The major policy consideration in favor of the application of collateral estoppel is the need to promote economy of judicial resources, finality, consistency and fairness. *See, Blonder-Tongue, supra; Kerotest Mfg. Co. v. C–O–Two Co.,* 342 U.S. 180, 72 S.Ct. 219, 96 L.Ed. 200 (1952); *Commissioner v. Sunnen Fire Equipment,* 333 U.S. 591, 68 S.Ct. 715, 92 L.Ed. 898 (1948). In the instant action, plaintiffs seek to invoke the doctrine of collateral estoppel offensively; specifically, the plaintiff seeks to estop Vishay from allegedly relitigating

whether it unlawfully achieved, maintained and advanced its dominance in the markets for metal foil resistors and precision resistors.

In *Parklane Hosiery Co., Inc. v. Shore*, 439 U.S. 322, 99 S.Ct. 645, 58 L.Ed.2d 552 (1979), the Supreme Court permitted the offensive use of collateral estoppel by a non-party to the first proceeding. However, to avoid unfairness to the defendant in the second action the court invoked the following discretionary safeguards: (1) the plaintiff must not have been able to easily join in the previous suit, and (2) the defendant must have had the opportunity to defend himself as fully as possible in the prior suit, unencumbered by any lack of procedural opportunities, choice of forum, unforeseeability of estoppel effect, or the negligible monetary exposure. *Parklane, supra* at 330–31, 99 S.Ct. at 651–52. On the facts of the instant action, this court does not find a risk of unfairness to the defendant on the basis of these considerations. Therefore, this court's attention is focused on the following preconditions to the application of collateral estoppel: (1) the party against whom collateral estoppel is being asserted must have been a party, or in privity with a party, to the prior action; (2) there must have been a final determination of the merits of the issues sought to be collaterally estopped; (3) the issues sought to be precluded must have been necessary, material, and essential to the prior outcome; (4) the issues sought to be precluded must have been actually litigated in the prior action, with the party against whom the estoppel is asserted having had a full and fair opportunity to litigate the issues; and (5) the issues actually and necessarily decided in the prior litigation must be identical to the issues sought to be estopped. *See Montana v. United States*, 440 U.S. 147, 153–55, 99 S.Ct. 970, 973–74, 59 L.Ed.2d 210 (1979); *Parklane Hosiery*, 439 U.S. at 326–337, 99 S.Ct. at 649–654; *Blonder-Tongue Laboratories, Inc. v. University of Illinois Foundation, supra; Yates v. United States*, 354 U.S. 298, 335–38, 77 S.Ct. 1064, 1085–87, 1 L.Ed.2d 1356 (1957), *overruled on other grounds, Burks v. United States*, 437 U.S. 1, 98 S.Ct.

2141, 57 L.Ed.2d 1 (1978); *Partmar Corp. v. Paramount Pictures Theatre Corp.*, 347 U.S. 89, 100–103, 74 S.Ct. 414, 420–422, 98 L.Ed. 532 (1954); *Emich Motors Corp. v. General Motors Corp.*, 340 U.S. 558, 568–69, 71 S.Ct. 408, 413–14, 95 L.Ed. 534 (1951).

■ In the instant action, the defendant against whom collateral estoppel is sought to be invoked was also the defendant and party against whom the jury verdict was rendered in the *Sfernice* case. Following the judgment for the plaintiff, Vishay did not pursue on appeal, but rather entered into a mutually beneficial settlement agreement with the plaintiff. When Vishay sacrificed its right to appeal in favor of a more satisfactory arrangement, Vishay thereby mooted its appeal. The preclusive effect of a prior judicial determination of a material and essential fact is not affected by the fact that the losing party failed to take an appeal to a higher court or could not take such an appeal. *Winters v. Lavine*, 574 F.2d 46 (2d Cir.1978). Nor is the preclusive effect of a judicial determination affected by the withdrawal of an appeal by the losing party. *Continental Can Co. v. Marshall*, 603 F.2d 590 (7th Cir.1979).

■ According to their settlement agreement in *Sfernice*, the parties also jointly moved to vacate the judgment. Generally, a judgment vacated by a trial court is thereby deprived of all conclusive effect, both as *res judicata* and as collateral estoppel. *See* 1B Moore, *Federal Practice* ¶ 0.416[2] at p. 2231 (2d ed. 1980); 50 C.J.S. *Judgments* § 702 at p. 157 (1947); *Restatement of Judgments* § 41 at p. 163 (1942). In support of this proposition the defendant cites cases which were reversed on appeal as erroneous—i.e., for want of jurisdiction [*Simpson v. Motorist Mutual Ins.*, 494 F.2d 850 (7th Cir.1974); *Woodbury v. United States*, 364 F.2d 993, 76 Ct.Cl. 838 (Ct.Cl. 1966) ] or on constitutional grounds [*Dunlop v. Rhode Island*, 398 F.Supp. 1269 (D.R.I. 1975) ] or because the finding was not the "law of the case" [*DeNafo v. Finch*, 436 F.2d 737 (3rd Cir.1971) ]. Further, in *GAF Corporation v. Eastman Kodak Company*,

519 F.Supp. 1203, 5 Trade Reg.Rep. (CCH) (1981–2 Trade Cas.) ¶ 64, 205 (S.D.N.Y.1981) ("GAF"), the Second Circuit specifically upheld those aspects of the prior Berkey judgment—which was largely vacated and remanded on appeal—for which GAF sought preclusive effect. Contrastingly, in the instant case, the vacatur of the *Sfernice* jury verdict was not issued on appeal; rather, it was a by-product of the settlement of the *Sfernice* action which was dismissed with prejudice. Thus, there is no appellate court direction as to the conclusive effect of the vacated judgment in *Sfernice.*

In consideration of judicial economy and the encouragement of settlements, *see, Nickerson v. Kutschera,* 390 F.2d 812 (3d Cir.1968), this court is unconvinced that these general policies would be hampered by the invocation of collateral estoppel herein. In *Sfernice,* the defendant Vishay, an unsuccessful litigant, chose to abrogate its judicially granted right to appeal and negotiated a bar to the potential collateral estoppel effect by settlement after the expenditure of the court's resources in a jury trial. However, the instant denial of Angstrohm's motion for summary judgment is based on other grounds.

■ As the Second Circuit Court of Appeals recently noted, "the application of the doctrine of collateral estoppel to any given issue is carefully circumscribed by two key requirements: (1) the issue in the subsequent suit must be identical to the issue actually decided in the prior suit and (2) the determination of the issue in the prior suit must have been necessary and essential to the judgment in that action." *RX Data Corporation v. Department of Social Services,* 684 F.2d 192 at 197 (2d Cir.1982), *citing Montana v. United States,* 440 U.S. 147, 153, 157, 99 S.Ct. 970, 973, 975, 59 L.Ed.2d 210 (1979); *Commissioner v. Sunnen,* 333 U.S. 591, 598–602, 68 S.Ct. 715, 719–21, 92 L.Ed. 898 (1948); *Cromwell v. County of Sac,* 94 U.S. 351, 353, 24 L.Ed. 195 (1877); *Winters v. Lavine, supra; Neaderland v. Commissioner,* 424 F.2d 639, 641–42 (2d Cir.), *cert. denied,* 400 U.S. 827, 91 S.Ct. 53, 27 L.Ed.2d 56 (1970); 1B Moore, *Federal Practice* ¶ 0.443 (2d ed. 1980).

■ The general verdict rendered in *Sfernice* does not give rise to collateral estoppel because it is silent as to which of the allegations of unlawful activity were actually found to be unlawful. Without such a specification of the basis for liability, it would be unfair to bar Vishay from litigating these issues. It has been held that a judgment which is silent with respect to which of many independently adequate grounds liability has been founded upon does not give rise to collateral estoppel. *Hertz v. Graham,* 168 F.Supp. 755 (S.D.N.Y. 1958) (refusing to estop a party as to her negligence where a prior general verdict of damages was based on a charge which included claims for both negligence and strict liability); *Lagana v. A.H. Robins Co.,* No. 75 C 1413 (E.D.N.Y., motion denied, August 13, 1979) (refusing to estop defendant as to liability under a prior general verdict resulting from a charge consisting of two claims: that a device was ineffective in preventing pregnancy and caused a perforated uterus); *In re Julius Bros.,* 217 F. 3 (2d Cir.1914) (where two acts of bankruptcy were alleged, an adjudication of bankruptcy which did not show upon which act it relied was held collaterally conclusive of neither act); 1B Moore, *Federal Practice* ¶ 0.443[4] at p. 3915 (2d ed. 1980).

■ The fair application of collateral estoppel is attendant upon the actual and necessary determination of identical issues in the instant and underlying cases. Where several counts have been submitted to the jury and the jury's verdict leaves unclear the grounds upon which its determination is based, the precision as to identity of issues which collateral estoppel demands is absent. Accordingly, collateral estoppel has been denied in cases where uncertainty exists as to the basis for the general verdict. In *Glass v. United States Rubber Co.,* 382 F.2d 378 (10th Cir.1967) the court denied collateral estoppel effect to an earlier general verdict defining the legal duties of a rubber manufacturer in a subsequent case for negligence with regard to a specific brand of

542

rubber hose. The general verdict was held to be an insufficient basis for a subsequent determination of specific liability. *Glass, supra* at 384.

In *Happy Elevator v. Osage Construction Corp.,* 209 F.2d 459 (10th Cir.1954), preclusive effect was denied to a previous directed verdict dismissing charges against two defendants where no determination as to the liability of either could be deciphered. A defendant could not maintain that the general verdict found him free of fault on the issue, when other unstated grounds could have led to the verdict. *See also Lipton Richard Franchise Investment, Inc.,* 73 Civ. 3720 (S.D.N.Y.1976); *Franks v. Thomason,* 4 B.R. 814 (D.C.N.D.Ga.1980).

█ In *Russell v. Place,* 94 U.S. 606, 608, 24 L.Ed. 214 (1877), the Supreme Court noted:

> ... If it appears that several distinct matters may have been litigated, upon one or more of which the judgment may have passed, without indicating which of them was thus litigated, and upon which the judgment was rendered, the whole subject-matter of the action will be at large, and open to a new contention, unless this uncertainty be removed by extrinsic evidence showing the precise point involved and determined.

Such "extrinsic evidence" may be found as in the *GAF* case by the ruling of a Court of Appeals specifically delineating the jury's findings and the sufficiency of evidence supporting such findings. *See also Ohio-Sealy Mattress Mfg. Co. v. Sealy, Inc.,* 585 F.2d 821 (7th Cir.1978), *cert. denied,* 440 U.S. 930, 99 S.Ct. 1267, 59 L.Ed.2d 486 in which the Court of Appeals was able to deduce with "mathematical certainty" the findings upon which the general verdict in a prior suit was necessarily based. *Ohio-Sealy, supra* at 844.

█ The nature of the charges culminating in a general verdict may also result in a determination that either issue constitutes legally sufficient grounds for estoppel purposes. In *Brown v. Werner,* 428 F.2d 375 (1st Cir.1970), a general verdict for the defendant on charges of negligent manufacture of a ladder and strict liability for its manufacture was held sufficient to estop both issues raised against the same defendant in subsequent litigation. Since either charge would compel a verdict for the plaintiff, the fact that the plaintiff prevailed necessitates the inference that at least one element of either charge was lacking. *Brown, supra* at 376. Therefore, collateral estoppel may fairly be applied to preclude the further litigation of either.

█ In the instant case, in light of the complexity of the issues before the jury, the verdict by itself and out of the context of the *Sfernice* trial could not necessarily be determined to have foreclosed any particular issue. *See Ohio-Sealy* at 844. The jury in the *Sfernice* litigation was asked to consider six alternative grounds upon which to rest a finding of the liability of the defendant:

> In summary if you find that Vishay fraudulently or inequitably produced a patent or that Vishay misused its patent by making overly broad assertions of its rights thereunder or that Vishay initiated improper patent interference proceedings or that Vishay improperly initiated litigation or improperly threatened to initiate litigation on trade secrets or on any other basis, and that such conduct excluded competitors, including Sfernice, from the market, then you must find that Vishay has engaged in illegal conduct as proscribed by our antitrust laws. Tr. at 1205.

The *Sfernice* jury's general verdict provides this court with no basis for determining which of the plaintiff's allegations were found by the jury in reaching its verdict— any one or all would have sufficed. The *Sfernice* jury was specifically instructed that liability could be predicated upon any one of the above asserted acts if it was found to have occurred and to have been unlawful within the meaning of the antitrust laws: "plaintiffs are not required to prove every one of its specific allegations." Tr. 1207.

Further, the *Sfernice* verdict is silent as to the grounds upon which it is based. Where, as in *Sfernice*,

> [a] judgment might have been based upon one or more of several grounds, but does not expressly rely upon any one of them, then none of them is conclusively established under the doctrine of collateral estoppel, since it is impossible for another court to tell which issue or issues were adjudged by the rendering court.

1B Moore, *Federal Practice* ¶ 0.443[4] at p. 3915. Since, "the actual basis for the verdict [in *Sfernice*] shall never [be] known since a special verdict was not ordered," *Hertz v. Graham, supra,* 168 F.Supp. at 756, "[no] one of [these grounds] is conclusively established under the doctrine of collateral estoppel...." 1B Moore, *Federal Practice, supra,* ¶ 0.443[4] at p. 3915. (Although defendant Vishay requested a special verdict, the court, with plaintiffs' consent, refused to so provide. *See* Tr. 1127.) The general verdict rendered in *Sfernice* is inconclusive on individual issues and thus cannot give rise to collateral estoppel effect.

The unfairness which would result if Vishay were estopped to prove the lawfulness of each of the acts alleged in *Sfernice* is highlighted by consideration of the license to prove damages which collateral estoppel would afford to plaintiffs. The specific determinations of the *Sfernice* jury with respect to the patents, lawsuits, industrial espionage, market allocation, etc. at issue cannot be deciphered by this court without speculation. Accordingly, to permit plaintiffs to attempt to prove damages flowing from acts with respect to which there has been no conclusive determination that such acts took place or the unlawfulness thereof would be manifestly unjust.

The antitrust laws provide that the only damages which may be recovered are those causally linked to acts found to be unlawful. *See, e.g. Royster Drive-In Theatres, Inc. v. American Broadcasting-Paramount Theatres, Inc.,* 268 F.2d 246, 250 (2d Cir.1959) (plaintiff must show a "causal connection" between the violations and its alleged damages), *cert. denied,* 361 U.S. 885,

80 S.Ct. 156, 4 L.Ed.2d 121 (1959); *Lefrak v. Arabian Amer. Oil Co.,* 487 F.Supp. 808, 823 (E.D.N.Y.1980) (a "clear causal connection" must be established). *See also* 15 U.S.C. § 15 ("[a]ny person who shall be injured in his business or properly by virtue of anything [for]bidden in the antitrust laws may sue therefore ... [for] damages.....") Thus, not every competitive act alleged to be unlawful in a complaint entitles a plaintiff to damages. Plaintiff may only recover damages proximately related to acts which are found to have occurred and to be exclusionary or anticompetitive. (See Instructions to *Sfernice* jury, Tr. 1224). If defendant were estopped to litigate its liability on the basis of the *Sfernice* action, plaintiffs would be permitted to recover damages casually linked to every allegation in *Sfernice* regardless of whether each of the acts for which damages are claimed was actually determined to have been unlawful or to have taken place.

In the instant action Angstrohm seeks damages for the assertion of claims under patents which they allege to have been fraudulently procured. However, the verdict in *Sfernice* does not show that the jury determined that any patents were fraudulently procured or wrongfully asserted. Further, in *Sfernice* it was alleged that Vishay instituted frivolous lawsuits against it for misappropriation of trade secrets, both before ITC and France, and engaged in industrial espionage against Sfer, solely for the purpose of harassment. The jury's verdict may have rested upon a determination that the lawsuits and alleged espionage were anti-competitive and exclusionary. This determination is not related to the lawfulness of defendant's patents, and the jury may well have found for Vishay on the patent issue. If Vishay were estopped to litigate the issues raised in *Sfernice*, plaintiffs could recover damages causally linked to the assertion of patents, notwithstanding the possibility that the *Sfernice* jury may have determined that the patents were lawful.

Therefore, plaintiff's motion for partial summary judgment based upon collateral

estoppel is denied in all respects; this court need not reach the other issues raised in this motion.

So ordered.